# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

DWIGHT MITCHELL,                    )
                                    )
    Plaintiff,              )
                                    )
v.                                  )    **Case No. 3:18-cv-01023**
                                    )    **Judge Crenshaw / Frensley**
WILSON TAYLOR, KIMBERLY TAYLOR,     )
CITIZENS BANK, CITY OF HARTSVILLE   )
TN, MARY HOLDER, BETTY LOU TAYLOR,  )
HATTIE McDONALD, JAMES McDONALD,    )
THOMAS LARRY EDMONSON, JAMES        )
DELANIS, BAKER DONELSON BEARMAN     )
CALDWELL & BERKOWITZ, KEVIN KEY     )
MICHAEL TOWNS, TOMMY P. THOMPSON,   )
BETTY SUE HIBDON,                   )
                                    )
    Defendants.             )

## REPORT AND RECOMMENDATION

### I.  Introduction

Pending before the Court are 7 Motions to Dismiss Plaintiff's Second Amended

Complaint (Docket No. 92) filed by Defendants Citizens Bank, Betty Lou Taylor, Larry

Edmonson; Baker, Donelson, Bearman, Caldwell & Berkowitz; James DeLanis, Betty Sue

Hibdon, Mary Holder, the City of Hartsville, James McDonald, Hattie McDonald, and Kimberly

Taylor, and Tommy Thompson.[1]  Docket Nos. 100, 104,[2] 115, 117, 128, 130, 132.  For sake of

---

[1] Michael Towns has not filed his own Motion to Dismiss, nor has he joined any of the pending Motions to Dismiss.  Additionally, although named as a Defendant in this action, Wilson Taylor has not been served, nor has an appearance been made on his behalf.

[2] Docket No. 104 is Defendant Betty Lou Taylor's Amended Motion to Dismiss, which replaces Docket No. 102, her original Motion to Dismiss.

clarity, the undersigned will address each Motion in turn.

## A. Citizens Bank

Defendant Citizens Bank ("Citizens") filed its Motion to Dismiss Plaintiff's Second Amended Complaint pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6), arguing that Plaintiff's Second Amended Complaint fails to cure the defects in his previous complaints. Docket No. 100. Citizens argues that this action should be dismissed on res judicata and collateral estoppel grounds because Plaintiff "has brought essentially the same case before - only to have it dismissed with prejudice." *Id*. Citizens further argues that this action should be dismissed "because the applicable statutes of limitations ran long ago." *Id.* Citizens additionally argues that Plaintiff "moreover, has failed to state a claim upon which relief may be granted under Rules 9(b) and 12(b)(6). *Id.* In support of its Motion, Citizens has contemporaneously filed a supporting Memorandum of Law. Docket No. 101.

Plaintiff has filed a Response to Citizens' Motion, as well as a supporting Memorandum. Docket Nos. 120, 121. In his Response and supporting Memorandum, Plaintiff incorporates by reference his previously-filed Responses and his "Motion to Set Scheduling Conference Refer Case to Mediation and Stay Motions to Dismiss," and maintains that because the Court denied Defendants' initial Motions to Dismiss as moot, "this Court has already ruled on those arguments, and his new arguments do not cure the deficiencies, Defendant . . . should not be given another bite at the apple and his motion to dismiss should be denied." Docket No. 120, p. 2. Plaintiff argues that Citizen's instant Motion is "virtually the same motion to dismiss [] but this time with more pages." Docket No. 121, p. 1.

Plaintiff further responds that Citizens' statute of limitations defense is deficient because

the case it cites for support is an unpublished opinion that "is not on point" because there was no claim in that case that the Bank had taken any property. *Id.* at 2. Plaintiff argues that the statute of limitations is tolled while a case is still "pending in federal court" and maintains that "this case was still 'pending' as it was on appeal when Plaintiff attempted to file his most recent action in state court." *Id.* at 4-5.[3] As to Citizen's res judicata argument, Plaintiff responds that this Court has "already ruled on" the issue of res judicata and Citizen "has raised no new argument to give this Court any reason to change its mind." *Id.* at 6. Finally, with respect to Citizen's Fed. F. Civ. P. 9(b) argument, Plaintiff responds that "focusing exclusively on the Rule 9(b) requirement of particularity is too narrow of an approach" because Rule 9's requirement for pleading fraud "with particularity" "must be viewed in light of the Rule 8 requirement for a 'short and plain statement of the claim' and for 'simple, concise, and direct' allegations." *Id.* Plaintiff additionally maintains that, "in the absence of a defendants' motion for a more definite statement under Rule 12(3), dismissal on the basis of Rule 9(b) alone is not appropriate." *Id.* Plaintiff concludes, "As this Court has already allowed Plaintiff to file his Second Amended Complaint and no Defendant has filed a new motion for a more definite statement, Defendant's Rule 9(b) defense is moot.

## B. Betty Lou Taylor

Defendant Betty Lou Taylor ("Ms. Taylor") filed her Corrected Motion to Dismiss Plaintiff's Second Amended Complaint pursuant to Fed. R. Civ. P. 8, 9(b), 12(b)(6), and Local

---

[3] Plaintiff's responsive Memorandum also contains a section related to "Larry Edmonson's Fraud." *See* Docket No. 121, pp. 5-6. Because Larry Edmonson has filed his own Motion to Dismiss and is not part of Citizen's Motion to Dismiss, and because Plaintiff has filed a Response to Mr. Edmonson's Motion, the undersigned will not include those arguments herein; rather, the undersigned will discuss Plaintiff's responsive arguments concerning Mr. Edmonson in due course.

3

Rule 7.01, arguing that the claims against her in Plaintiff's Second Amended Complaint are barred by the statute of limitations and must therefore be dismissed. Docket No. 104. In support of her Motion, Ms. Taylor has contemporaneously submitted a Memorandum of Law in which she, *inter alia*, "adopts the applicable arguments of Citizens Bank's Motion to Dismiss." Docket No. 103. Beyond "adopt[ing] the applicable arguments of Citizens Bank's Motion to Dismiss" and asserting that Plaintiff's claims against her are time-barred, Ms. Taylor argues that Plaintiff has failed to plead his fraud allegations against her with the requisite specificity under Fed. R. Civ. P. 9(b), and further argues that collateral estoppel precludes Plaintiff's underlying issues from being re-litigated. *Id.* Ms. Taylor contends that "this lawsuit is yet another attempt by Plaintiff to seek relief for the same events. This time, he adds [Ms.] Taylor as a party and asserts that she caused him harm in her role as a trustee under the deed of trust related to Plaintiff's loan from Citizens, and through various allegedly fraudulent activities." *Id.* at 8. Ms. Taylor maintains that, although the allegations against her are unclear, "it appears that Plaintiff alleges fraud, fraudulent concealment, and fraudulent conversion." *Id.* She notes that Plaintiff avers that he "timely filed his lawsuit based on Tenn. Code Ann. § 28-2-103, which is a statute that may be used defensively by an adverse possessor. Accordingly, this section is not applicable in the present case." *Id.* at 8-9. Ms. Taylor asserts that the statute of limitations has run because Plaintiff's claims involve injury to property and the applicable statute of limitations is three years, pursuant to Tenn. Code Ann. § 28-3-105. *Id.* at 9.

Ms. Taylor further argues that Plaintiff has failed to properly plead his causes of action with the requisite particularity pursuant to Fed. R. Civ. P. 9(b) and fails to plead facts that can establish a claim for either fraud or intentional misrepresentation under Tennessee law. *Id.* at 10-

11.  Ms. Taylor additionally contends that Plaintiff's claims are conclusory "'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* at 12, *referencing Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  For all these reasons, Ms. Taylor argues that Plaintiff's claims against her should be dismissed.  *Id., passim.*

Plaintiff has filed a Response to Ms. Taylor's Motion, as well as a supporting Memorandum.  Docket Nos. 122, 123.  In his Response and supporting Memorandum, Plaintiff incorporates by reference his previously-filed Responses and his "Motion to Set Scheduling Conference Refer Case to Mediation and Stay Motions to Dismiss," and maintains that Ms. Taylor, "having been denied a motion to dismiss already in this matter, nonetheless has filed virtually the same motion to dismiss again."  Docket No. 123, p. 1.  Plaintiff asserts that in the absence of a motion for more definite statement under Fed. R. Civ. P. 12(3), dismissal on the basis of Rule 9(b) alone is not appropriate.  *Id.* at 1-2.  Plaintiff responds that because Ms. Taylor "has raised no argument that was not already considered by this Court and she has not filed a motion for a new definite statement she is not entitled to the relief she is seeking."  *Id.* at 2.  Plaintiff asserts that this Court should "deny all pending motions to dismiss and set this case for a scheduling conference."  *Id.*  Plaintiff argues that Ms. Taylor (along with the other Defendants in this matter), "should not be allowed to repeatedly ask for motions to dismiss raising essentially the same failed arguments."  *Id.*

## C.  Thomas Larry Edmonson

Defendant Larry Edmondson ("Mr. Edmonson") filed his Motion to Dismiss Plaintiff's Second Amended Complaint pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6), arguing that this action "is a continuance of [Plaintiff's] claims against Citizens's Bank of Hartsville which began

5

with me well over ten years ago in a Bankruptcy case No. 309-10241." Docket No. 115.[4]  Mr. Edmonson notes that Plaintiff has come "to this Court after exhausting his possible remedies in Bankruptcy Court" and is "rehashing the same set of factual allegations." *Id.* at 1.  Mr. Edmonson notes that Plaintiff was warned in 2015 that further attempts to relitigate the same issues could result in sanctions, and further notes that in a more recent related bankruptcy proceeding raising the same set of factual allegations, the Sixth Circuit granted Citizens double its fees and costs pursuant to Fed. R. App. Proc. 38 and 28 U.S.C. § 1912. *Id.* at 1-2.

As to Plaintiff's Second Amended Complaint, Mr. Edmonson argues that it fails to cure the defects in Plaintiff's previous complaints. *Id.* at 2.  Mr. Edmonson further argues that Plaintiff's case should be dismissed with prejudice on res judicata and collateral estoppel grounds because "he has brought essentially the same case before - only to have it dismissed with prejudice." *Id.*  Mr. Edmonson additionally argues that this case should be dismissed because the applicable statutes of limitations have run, and because Plaintiff has failed to state a claim upon which relief can be granted under Rules 9(b) and 12(b)(6). *Id.*

Plaintiff has filed a Response to Mr. Edmonson's Motion, as well as a supporting Memorandum.  Docket Nos. 134, 135.  In his Response and supporting Memorandum, Plaintiff argues that Mr. Edmonson's Motion does not follow proper procedure because he did not file a supporting Memorandum of Law, and Plaintiff further argues that Mr. Edmonson makes no "attempt to address the very serious allegations against him." Docket No. 135.  With regard to Mr. Edmonson's incorporation of, and reliance upon, the Memorandum of Law filed by James A.

---

[4] Mr. Edmonson relies on the Memorandum of Law filed by James A. DeLanis, Attorney for Citizens Bank of Hartsville.  *Id.* at 2.

Delanis, Attorney for Citizens, Plaintiff argues that, other than the statutes of limitations defense, "the other arguments raised by Citizens Bank have nothing to do with any of the claims against Larry Edmonson, [so] he cannot legally rely on them in his Motion to Dismiss." *Id.* at 2.

Plaintiff argues that Citizens' arguments regarding res judicata and collateral estoppel "center on arguments it makes regarding issues that it claims were raised or could have been raised in earlier cases. However the causes of action against Defendant Larry Edmonson are distinct and were not raised, and indeed could not have been raised, until 2018 when Plaintiff discovered new evidence." *Id.* Specifically, Plaintiff maintains that this "new evidence" "showed that the 2013 investigation results from the U.S. Trustee's Office were inaccurate due to false statements told to them by Defendant Larry Edmonson and corruption of the U.S. Bankruptcy Court Records." *Id.* at 2-3. Plaintiff reiterates that he has not previously litigated his allegations against Mr. Edmonson of "conflict of interest, fraud to the U.S. Trustee's Office, and tortious interference with contracts." *Id.* at 3. Plaintiff argues that because he did not learn of the "fraudulent concealment" until later, he has not had a full and fair opportunity to litigate these claims such that res judicata and collateral estoppel are inapplicable to his claims against Mr. Edmonson. *Id.*

Plaintiff argues that "it is undisputed that 1) no claim against Larry Edmonson has even been adjudicated in any previous case 2) an investigation by the U.S. Trustee's Office, that concluded on January 11, 2013, determined based on statements by Larry Edmonson and a review of the bankruptcy court records, that Larry Edmonson did not represent Alternative Healthcare Solutions Inc in bankruptcy court against Plaintiff 3) Plaintiff found new evidence in 2018 that showed that Larry Edmonson had misrepresented the truth to the US Trustee's Office,

7

the bankruptcy court records were inconsistent, and that the conclusions of the 2013 investigation were mistaken." *Id.* at 5. Plaintiff asserts, "It would be a miscarriage of justice to grant a dismissal to Defendant Larry Edmonson, and by extension to Citizens Bank, without there being an inquiry into these important questions of fact and law." *Id.* Plaintiff adds that Mr. Edmonson's Motion to Dismiss should be denied because the statute of limitations should be equitably tolled in light of the averred fraudulent concealment. *Id.*

**D. Baker, Donelson, Bearman, Caldwell & Berkowitz and James DeLanis**

Defendants Baker, Donelson, Bearman, Caldwell & Berkowitz ("Baker Donelson") and James DeLanis ("Mr. DeLanis") filed their Motion to Dismiss Plaintiff's Second Amended Complaint and supporting Memorandum of Law, arguing that Plaintiff's claims against them should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) because they: (1) are barred by the three-year statute of limitations for fraud claims; (2) are barred by the collateral attack doctrine because the claims against Baker Donelson and Mr. DeLanis constitute collateral attacks on adverse rulings in two other cases; and (3) fail to state a cognizable claim for relief under Rules 9(b) and 12(b)(6). Docket Nos. 117, 118. Mr. DeLanis and Baker Donelson note that this action "is the latest in a litany of legal and administrative proceedings brought by Plaintiff Dwight Mitchell against Citizens Bank (...), its directors and officers, and now its attorneys, rehashing the same set of factual allegations." Docket No. 118, p. 1. Mr. DeLanis and Baker Donelson argue that beyond being barred by the statute of limitations and the collateral attack doctrine, Plaintiff's claims against them as Citizen's counsel fail to state a claim for relief because there was nothing improper about their behavior in representing Citizen against Plaintiff's accusations. *Id.* at 2.

8

Mr. DeLanis and Baker Donelson argue that the underlying allegations of the instant action have already been litigated and Plaintiff had ample opportunity to respond to their arguments and to challenge the Court's rulings on those issues such that Plaintiff cannot collaterally attack those rulings through a separate action. *Id.* at 3. They also argue that Plaintiff's claims are for fraud and constructive fraud, both of which are subject to a three-year statute of limitations. *Id.* Mr. DeLanis and Baker Donelson contend that Plaintiff's filings in his previous lawsuits evidence that he was aware of the facts underlying his claims more than three years before filing this lawsuit; thus barring his claims. *Id.* Mr. DeLanis and Baker Donelson further argue that Plaintiff's allegations fail to state a claim for relief because "Baker Donelson and Mr. DeLanis simply pointed out that Mr. Mitchell's loan was a commercial loan that was not covered by the Truth in Lending Act" and "properly moved to have one of Mitchell's many cases transferred to the District Judge that had heard this case the last time Mitchell filed it." *Id.* at 3-4.

Plaintiff has not filed a separate Response to Baker Donelson and Mr. DeLanis' Motion to Dismiss.

**E. Betty Sue Hibdon**

Defendant Betty Sue Hibdon ("Ms. Hibdon") filed her Motion to Dismiss Plaintiff's Second Amended Complaint pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6), arguing that Plaintiff's claims against her should be dismissed with prejudice on res judicata and collateral estoppel grounds because "he has brought essentially the same case before - only to have it dismissed with prejudice"; because the applicable statutes of limitations ran long ago; and because Plaintiff has failed to state a claim upon which relief may be granted under Rules 9(b) and 12(b)(6). Docket No. 128. Ms. Hibdon, a former President of Citizens Bank who is now a

member of its Board of Directors, notes that she has not been served but she has learned of the case and is moving to dismiss it "in order to avoid delay and unnecessary expense." *Id.* at fn. 1. She additionally "incorporates, adopts, and relies on applicable arguments made in support of Citizens Bank's Motion to Dismiss, as well as the Motions to Dismiss of other Defendants." *Id.* at 2.

Ms. Hibdon has contemporaneously submitted a supporting Memorandum of Law. Docket No. 129. Reiterating the grounds and incorporations set forth in her Motion, Ms. Hibdon, in her Memorandum, argues that although Plaintiff avers that she committed fraudulent concealment and fraudulent conversion of real property, these claims have already been litigated at least once before and are therefore barred by res judicata and collateral estoppel. *Id.* at 2-3. Ms. Hibdon further argues that, although Plaintiff "tries to circumvent the statute of limitations by pointing to the seven-year statute of limitations for adverse possession," his claims sound in fraud and/or wrongful foreclosure and are therefore subject to a three-year statute of limitations. *Id.* at 3. Ms. Hibdon contends that Plaintiff's previous filings evidence that he was aware of the facts alleged in 2009 or learned of them no later than 2013, such that they are time-barred. *Id.*

Ms. Hibdon further argues that, to the extent that Plaintiff alleges that she engaged in fraudulent concealment or fraudulent conversion "in connection with arguments made by Mr. Delanis as counsel for Citizens Bank and/or Wilson Taylor," Plaintiff cannot collaterally attack the Court's rulings through a separate action. *Id.* at 4. Ms. Hibdon adds, "Even if these allegations are not barred, they do not state a cognizable claim for relief under Federal Rules of Procedure 8 and 9(b)." *Id.*

Plaintiff has filed a Response to Ms. Hibdon's Motion to Dismiss, as well as a supporting

Memorandum of Law.  Docket Nos. 149, 150.  In his Response and supporting Memorandum, Plaintiff argues that "none of those previous [Court] rulings are a legitimate reason for dismissal" because the "previous 42 U.S.C. § 1983 action turned on the question of statute of limitations for the federal cause of action."  Docket No. 150, p. 1.  Plaintiff argues that he has "timely filed his state cause of action against Betty Sue Hibdon in federal court and it is neither barred by the Statute of Limitations nor res judicata nor Rule 9(b)."  *Id.* at 2.  Plaintiff further argues that he has not had a full and fair opportunity for his causes of action against Ms. Hibdon to be heard. *Id.* at 3-8.  Plaintiff contends, "While there have been many filing[s] in multiple cases related to this matter, there has never been a 'full and fair' adjudication on the merits of one key issue, whether the property descriptions for the loans changed from the property description of Plaintiff's property before the loans were made, rendering the loans invalid under Tennessee Law."  *Id.* at 6.  Plaintiff notes that "Defendants could have litigated this issue on the merits with a minimal amount of legal pleadings and documentation.  Instead they have engaged in a long and torturous process of fraud and legal maneuverings [*sic*] to prevent this one key issue from ever seeing the light of day."  *Id.* at 6-7.

As to the statute of limitations issue, Plaintiff argues that this action is governed by the seven-year statute of limitations set forth in T.C.A. § 28-2-103 because this action is about "the *taking* of property" not "the *injury* of property."  *Id.* at 9 (emphasis original).  Plaintiff asserts that the statute of limitations for his state law cause of action was tolled by his "timely filing" in federal court in 2013, and "the tolling did not stop until 30 days after the U.S. Supreme Court closed out the case in February 2019."  *Id.* at 10.  Plaintiff maintains that he did not "get the evidence of Betty Sue Hibdon's fraudulent statements to the Small Business Administration until

2013." *Id.* at 14.

With regard to Ms. Hibdon's Rule 9(b) argument, Plaintiff responds that "this Court has already allowed Plaintiff to file his Second Amended Complaint and no Defendant has filed a new motion for a more definite statement," so the Rule 9(b) "defense is moot." *Id.* at 18.

## F. City of Hartsville, Tennessee, Mary Holder, Hattie McDonald, James McDonald, and Kimberly Taylor

Defendants Mary Holder, the City of Hartsville, James McDonald, Hattie McDonald, and Kimberly Taylor ("City of Hartsville Defendants") filed their Motion to Dismiss Plaintiff's Second Amended Complaint for failure to state claim upon which relief may be granted, arguing that Plaintiff's claims against them should be dismissed because they are barred by the statutes of limitations, the pleading standards of the Federal Rules of Civil Procedure, and the doctrines of res judicata/collateral estoppel. Docket No. 130. Additionally, the City of Hartsville Defendants argue that Plaintiff's claims against Ms. Kimberly Taylor are "barred by the pleading standards of the Federal Rules of Civil Procedure and qualified and judicial immunities." *Id.* Beyond arguing for dismissal of Plaintiff's claims against them, the City of Hartsville Defendants request that Plaintiff be sanctioned "for filing yet another frivolous lawsuit", and further request that this Court "prohibit him from filing any further lawsuits against any party related to the matters he has previously litigated time and time again." *Id.* at 2.

Along with their Motion, the City of Hartsville Defendants have filed a supporting Memorandum of Law and incorporate "the legal arguments and procedural backgrounds presented by co-defendants." *Id.* at 2; Docket No. 131. In their Memorandum, the City of Hartsville Defendants argue that Plaintiff's allegations against Ms. Holder, Ms. McDonald, and

Mr. McDonald involve two theories: the first, involving the recording of deeds and other legal documents; and the second, involving the changing of address from 700 McMurry to 802 McMurry, and they argue that "any such theories are barred by the statute of limitations, the pleading standards of the Federal Rules of Civil Procedure, and the doctrines of collateral estoppel/res judicata." *Id.* at 8-9. The City of Hartsville Defendants also argue that Plaintiff's allegations fail to allege plausible causes of action under *Twombly* because they "contain legal conclusions without factual support." *Id.* at 10.

The City of Hartsville Defendants notes that, despite Plaintiff's contention, "there is no 'fraudulent conversion of real property' claim under common law." *Id.* at 11. The City of Hartsville Defendants maintain that, instead, there exists a common law conversion claim that requires proof of things that Plaintiff has not alleged. *Id.* The City of Hartsville Defendants argue that because Plaintiff has failed to allege the requisite elements, this claim must be dismissed. *Id.* The City of Hartsville Defendants further contend that, "to the extent that Plaintiff's claims for fraudulent concealment can be read to actually allege misrepresentation, a misrepresentation claim would be barred by the Tennessee Governmental Tort Liability Act. Tenn Code Ann. § 29-20-205(6)." *Id.*

As to Plaintiff's fraudulent concealment claim, the City of Hartsville Defendants maintain that Plaintiff has failed to plead his allegations of fraud with the requisite particularity and because Plaintiff "fails to explain why, through ordinary diligence, he was unable to learn about this alleged concealment." *Id*. at 11-12. The City of Hartsville Defendants maintain that Plaintiff's Second Amended Complaint "provides no explanation for whether the change in address was concealed (it was allegedly changed by members of the Board of Zoning) and why

he would not have discovered the change in address in light of his interest in the property." *Id.* at 13. They further maintain that Plaintiff has additionally failed to allege how the change in address damaged him in light of the fact that the Bank had already foreclosed on his property. *Id.* Additionally, the City of Hartsville Defendants assert that fraudulent concealment claims are barred by the Tennessee Governmental Tort Liability Act. Tenn. Code Ann. § 29-20-205(6). *Id.* at 13. The City of Hartsville Defendants reference and incorporate the arguments of Citizen Bank's Memorandum of Law related to the "fully litigated and resolved" claims related to the changing of address and the recording of incorrect information. *Id.*

Turning to Plaintiff's claims against Ms. Kimberly Taylor and the City of Hartsville regarding their alleged deprivation of his right to access the courts, the City of Hartsville Defendants maintain that this claim should be dismissed as a matter of law and further maintain that, to the extent that Ms. Kimberly Taylor is sued in her individual capacity, she is entitled to qualified and judicial immunity. *Id.* They note that, to the extent that Ms. Kimberly Taylor is sued in her official capacity, she stands in the shoes of the City of Hartsville, and they argue that Plaintiff's failure to plead municipal liability entitles the City of Hartsville to a dismissal. *Id.* At 14.

As to Plaintiff's denial of access to the courts claims against Ms. Taylor and the City of Hartsville brought pursuant to 42 U.S.C. 1983, the City of Hartsville Defendants argue that the factual allegations of Plaintiff's Second Amended Complaint "utterly fail to demonstrate that these Defendants prevented him from filing his lawsuit." *Id.* at 15. The City of Hartsville Defendants further note that "Plaintiff's allegations do not indicate that Plaintiff made any attempt at challenging the Judge's decision to deny the request of simply attempted to refile his

14

complaint. It does not appear that the Plaintiff was unable to afford bringing his state court lawsuit. The Plaintiff has the funds to file the instant action." *Id.* The City of Hartsville Defendants argue, therefore, that even if Plaintiff's allegations against Ms. Taylor are taken as true, they do not establish that she actually prohibited or limited Plaintiff's access to the Courts. *Id.* They further argue that Plaintiff's actions also fail because he has failed to demonstrate that the alleged actions either foreclosed him from filing suit or rendered his remedies in the suit ineffective. *Id.* at 15-16.

With regard to Plaintiff's allegations against Ms. Kimberly Taylor as Clerk, the City of Hartsville Defendants argue that she is entitled to judicial and qualified immunity because Plaintiff's allegations "indicate that Ms. Taylor's conduct was in reliance upon a judicial determination, and she is entitled to judicial immunity by virtue of this conduct" and because she is entitled to qualified immunity since Plaintiff has failed to show that these Defendants either violated his constitutional rights or that the alleged violation violated a clearly established right. *Id.* at 16-18. The instant Defendants note that Plaintiff fails to show that the order denying his petition for in forma pauperis is a judgment, as that term is used in the Tennessee Rules of Civil Procedure. *Id.* at 18.

As to Plaintiff's claims against the City of Hartsville as the supervisor of Ms. Kimberly Taylor and alleging a pattern and custom of violating access to the courts, the City of Hartsville Defendants argue that respondeat superior does not form an actionable basis for the imposition of municipal liability, and a municipality cannot be liable for a custom or policy unless that custom or policy is facially unconstitutional as written or articulated, or is facially constitutional but consistently implemented to result in constitutional violations with explicit or implicit

15

ratification by city policymakers. *Id.* at 20-21. They maintain that Plaintiff has failed to allege a custom or policy by the City of Hartsville and has not identified a policy that is either unconstitutional or constitutional but consistently implemented to violate the constitution, such that Plaintiff's allegations are insufficient to impose municipal liability. *Id.* at 21.

Plaintiff has filed a Response arguing that he tried to file his state law cause of action in Trousdale County Court "but was effectively denied access to the courts [by] Defendant Kimberly Taylor, or someone under her direct supervision." Docket No. 157, p. 2. Plaintiff explains that this "denial of access was in the form of an unsubstantiated claim that the judge on the case, who was never identified, denied the Plaintiff's pauper's status but the clerk's office would not give a copy of the order of the denial nor would they tell Plaintiff how much he needed to file the complaint." *Id.* Plaintiff reiterates his contentions that Defendants Mary Holder, James McDonald, and Hattie McDonald "conspired with other defendants to fraudulently convert Plaintiff's property and engaged in fraudulent concealment of the facts of that conspiracy" and that Defendant Wilson Taylor "changed the property description on the deeds of trust for loans given to Plaintiff in order to hide possible encroachment on Plaintiff's property by property owned by the Board of Education." *Id.* Plaintiff maintains that Defendant Hattie McDonald tried to get him to re-zone his property prior to the loans being made. *Id.*

Plaintiff asserts that Defendants Mary Holder, James McDonald, and Hattie McDonald were members of the Board that twice changed the address and that Defendant Mary Holder twice recorded the change. *Id.* at 3. Plaintiff contends that the "change was made to cover up the change in property description by co-Defendant Wilson Taylor." *Id.* Plaintiff argues that there is no "natural explanation" for the changes of address and contends that Defendant James

16

McDonald "falsely" told him "as recently as 2018 that he was not on the zoning board at the time the address changes were made even though the records show that he was." *Id.*

The City of Hartsville Defendants have filed a Reply. Docket No. 161. In their Reply, the City of Hartsville Defendants reiterate their contention that the applicable statute of limitations is three years and that is has run, such that Plaintiff's claims against them are time-barred. *Id.* The City of Hartsville Defendants further reply that, contrary to Plaintiff's position, if a plaintiff fails to assert a state law claim in a federal lawsuit, then the tolling function of 28 U.S.C. § 1367(d) does not apply, and Plaintiff's claims were not tolled during any previous lawsuit because those claims were not raised in the past. *Id.* at 2. The City of Hartsville Defendants maintain that Plaintiff's unsuccessful attempt at amending the pleadings to assert a state law claim against Mary Holder does not satisfy 28 U.S.C. § 1367(d), and further note that Plaintiff fails to show that any such amendment would have been timely if allowed. *Id.*

As to Plaintiff's fraudulent concealment claim, the City of Hartsville Defendants reply that Plaintiff has failed to allege how any of them have fraudulently concealed any cause of action from Plaintiff other than by participating in the change of a mailing address, and they further reply that Plaintiff fails to allege or explain how a zoning commission's vote to change a mailing address is connected to Plaintiff's claim of fraudulent concealment or fraudulent conversion of real property. *Id.* at 3. The City of Hartsville Defendants additionally note that Plaintiff has failed to adequately allege civil conspiracy involving them, as Plaintiff fails to allege intent or knowledge of intent amongst these Defendants or between these Defendants and others. *Id.* The City of Hartsville Defendants argue that the changing of the mailing address by the zoning commission cannot conceal the conversion of real property because it is done as a matter

of public record. *Id.*

As to denial of access to the courts, the City of Hartsville Defendants argue that Plaintiff's averment that he was unable to file his complaint in state court because he did not know how much it cost and because he did not receive a copy of the order denying his application to proceed in forma pauperis is insufficient because a denial of Plaintiff's right of access to the courts requires a showing that Defendants' actions prevented the filing of the suit or rendered ineffective any remedy he may have had. *Id.* at 4. They further argue that Plaintiff has failed to allege how he was prevented from bringing his claim, how his right to file his claim has been foreclosed or injured, such that his claim should be denied. *Id.*

Finally, the City of Hartsville Defendants argue that Plaintiff's response does not establish that Ms. Kimberly Taylor violated a clearly-established constitutional right such that she is entitled to qualified immunity and Plaintiff's response fails to allege any theory of municipal liability other than *respondeat superior*, which is insufficient to impose municipal liability, such that Plaintiff's claims against them should be dismissed as a matter of law. *Id.*

## G. Tommy P. Thompson

Defendant Tommy P. Thompson ("Mr. Thompson") filed his Motion to Dismiss Plaintiff's Second Amended Complaint and supporting Memorandum of Law, arguing that Plaintiff's claims against him should be dismissed with prejudice pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6), because the "Second Amended Complaint contains zero allegations of individual wrongdoing on the part of Mr. Thompson." Docket Nos. 132, 133. Mr. Thompson notes that Plaintiff does not allege any tortious conduct, or even direct involvement, on his part. Docket No. 133, p. 5. Mr. Thompson explains, "In essence, [Plaintiff] contends that General Thompson

18

was on the Board of Directors of Citizens Bank at pertinent times. His status as a director of Citizens Bank, however, does not give rise to personal liability." Docket No. 132, p. 2. Mr. Thompson asserts, in the absence of allegations of tortious conduct or wrongdoing, Plaintiff cannot plead a plausible claim for relief against him and he argues that the allegations of his Second Amended Complaint "falls far short of the heightened pleading standards for fraud-based claims." Docket No. 133, p. 6.

Mr. Thompson incorporates and adopts the applicable arguments of the other Defendants and additionally asserts that this action should be dismissed with prejudice because all claims against him are barred by res judicata / collateral estoppel and the applicable statutes of limitations. Docket No. 132, p. 2; Docket No. 133, pp. 6-7.

Plaintiff has not filed a Response to Mr. Thompson's Motion.

## H. Summation

For the reasons set forth below, the undersigned finds that Plaintiff's claims are time-barred, barred by the doctrines res judicata and collateral estoppel, conclusory, plead with insufficient particularity, and fail to state a claim upon which relief can be granted. The undersigned therefore recommends that Defendants' Motions to Dismiss (Docket Nos. 100, 104, 115, 117, 128, 130, 132) be GRANTED and that Plaintiff's claims against them be DISMISSED WITH PREJUDICE.

With regard to Defendant Michael Towns, the only served Defendant not a party to one of the instant Motions to Dismiss, the undersigned finds that Plaintiff's allegations against Michael Towns, as the bona fide purchaser of the foreclosed upon Realty, are time-barred, conclusory, and insufficient to state a claim upon which relief can be granted. Accordingly, the undersigned

19

recommends that Plaintiff's claims against Defendant Town likewise be DISMISSED WITH PREJUDICE.

## II.  Facts

### A.  Procedural History

#### 1.  Relevant Background

In 2002, Plaintiff entered into several Promissory Notes with Citizens Bank, resulting in a total indebtedness to Citizens of $375,000.00.  *See, e.g., In re Dwight J. Mitchell*, Case No. 3:09-bk-10241 (Bankr. M.D. Tenn.).  Plaintiff executed Deeds of Trust against the Realty securing each of the Promissory Notes.  *Id.*

Plaintiff operated a long-term care facility on the Realty.  *Id.*  In August 2007, the State of Tennessee closed Plaintiff's long-term care facility and removed all patients.  *Id.*  Plaintiff requested an administrative hearing before the Tennessee Board for Licensing Health Care Facilities to challenge the closure.  *See* Docket No. 101, Ex. A.  Plaintiff received a hearing, was present for the hearing, and represented himself at the hearing.  *Id.*  Based upon "the testimony of the witnesses, the evidence introduced at the hearing, the arguments of counsel, and the record as a whole," the Board found that Plaintiff had failed to meet the appropriate standards; violated applicable statutes, rules, and regulations, including sanitation standards, record-keeping rules, and safety requirements; and placed patients in danger.  *Id.*  In its January 7, 2008 Administrative Order, the Board enumerated 21 specific findings of egregious health, safety, and sanitation violations.  *Id.*  Accordingly, the Board revoked Plaintiff's license to operate the facility.  *Id.*

After the State removed the patients from the facility, Plaintiff failed to repay the loans.  *See, e.g., In re Dwight J. Mitchell*, Case No. 3:09-bk-10241 (Bankr. M.D. Tenn.).  After almost 2

years of nonpayment, Plaintiff was in arrears and in default, owing Citizens $363,443.00, excluding attorneys' fees. *Id.* Citizens scheduled a foreclosure sale for December 30, 2008, which was postponed due to Plaintiff's filing for bankruptcy. *Id.* Citizens subsequently rescheduled the foreclosure sale for April 3, 2009, then May 1, 2009, then September 11, 2009. *Id.* Before Citizens could complete the foreclosure sale scheduled for September 11, 2009, Plaintiff filed a voluntary petition for Chapter 11 Bankruptcy. *Id.*

### 2. Case No. 3:09-bk-10241

On September 6, 2009, Plaintiff filed a voluntary petition for Chapter 11 Bankruptcy in the U.S. Bankruptcy Court for the Middle District of Tennessee ("the 2009 Bankruptcy"). *In re Dwight J. Mitchell*, Case No. 3:09-bk-10241 (Bankr. M.D. Tenn.). On October 29, 2009, Citizens moved for relief from the automatic stay so that it could foreclose on the Realty. *Id.* In response, Plaintiff argued that Citizens had only filed claims for 4 notes and asserted that "the deeds of trust are inaccurately drawn and describe property which only covers part of his tract and said descriptions vary from the descriptions given to the United States Small Business Administration in connection with apporval [*sic*] of the SBA loans." *Id.* at Docket No. 30, p. 1.

On February 9, 2010, the Bankruptcy Court held a hearing on the Motion and ultimately granted Citizens relief from the automatic stay. *Id.* at Docket No. 48. Plaintiff appealed the grant to the Bankruptcy Appellate Panel, but his appeal was dismissed for lack of prosecution on April 19, 2010, after Plaintiff had taken no action for two months. *Id.* at Docket No. 71. On March 16, 2010, Plaintiff's 2009 Bankruptcy was dismissed. *Id.* at Docket No. 61. Plaintiff did not appeal the Order dismissing his 2009 Bankruptcy.

On November 1, 2013, approximately 2 ½ years after his 2009 Bankruptcy was

21

dismissed, Plaintiff filed a "Motion to Reopen Case and Vacate Relief From Automatic Stay" in the 2009 Bankruptcy, claiming that newly discovered evidence and fraud entitled him to relief. *Id.* at Docket No. 87. Plaintiff's "newly discovered evidence" was that based on "sensitive but unclassified documents from the United States Department of Treasury . . . Citizens Bank had no security interests in 700 McMurray, Hartsville, TN which was the description of the property used as collateral in loans guaranteed by the Small Business Administration." *Id.* at 1. Plaintiff argued that Citizens committed fraud because it "knew that they were not secured creditors however they played that role." *Id.* at 2. Plaintiff also asserted that "Citizens Bank's deeds regarding 700 McMurray, Hartsville, TN are not properly validated . . . are vague and should be ruled void." *Id.* at 2-3. Plaintiff further argued that the Realty had been "renamed as 800 McMurray, Hartsville, TN." *Id.* at 3. Citizens opposed Plaintiff's Motion to Reopen. *Id.* at 90. The Bankruptcy Court took no action on the Motion.

On July 28, 2017, more than 7 years after the dismissal of his 2009 Bankruptcy, Plaintiff filed a "Notice of Hearing Motion to Reopen Case and Vacate Relief From Automatic Stay. *Id.* at Docket No. 91. Finding that there was "no basis for setting aside dismissal in an eight-year old case based on a motion that raises issues that have been litigated and decided multiple times," the Bankruptcy Court denied Plaintiff's Motion in an Order entered on August 2, 2017. *Id.* at Docket No. 92.

### 3. Case No. 3:10-bk-06545

After Plaintiff's 2009 Bankruptcy case was dismissed, Citizens rescheduled its foreclosure sale for June 25, 2010, but on June 23, 2010, Plaintiff filed another Chapter 11 Bankruptcy Petition ("the 2010 Bankruptcy"). *See In re Dwight J. Mitchell*, No. 3:10-bk-06545

(Bankr. M.D. Tenn.). Citizens moved for relief from the automatic stay. *Id.* at Docket No. 13.

In response, Plaintiff again argued that "the deeds of trust are inaccurately drawn and describe

property which only covers part of his tract and said descriptions vary from the descriptions

given to the United States Small Business Administration in connection with apporval [*sic*] of

the SBA loans." *Id.* at Docket No. 26. The Bankruptcy Court granted Citizens' Motion for stay

relief, stating:

> [T]he same exact issues are being raised by the Debtor to this
> Motion which were heard by this Court in the Debtor's previous
> case in February of this year. The Court took Judicial notice that
> his case is the fourth bankruptcy the Debtor has filed since 2008
> and ruled that the issue raised in opposition to the Movants[;]
> Motion are Res Judicata. Accordingly, the Citizens Bank is
> Granted Relief from the stay and no future filing by the Debtor can
> alter that Relief.

*Id.* at Docket No. 47.

Citizens foreclosed on the Realty on September 10, 2010. *In re Dwight J. Mitchell*, Case

No. 3:09-bk-10241 (Bankr. M.D. Tenn.).

### 4.  Case No. 3:10-bk-09670

After Citizen foreclosed on the Realty on September 10, 2010, Plaintiff filed another

bankruptcy, attempted to set aside Citizens' foreclosure, and attempted to enjoin Citizens from

conveying the Realty. *In re Dwight J. Mitchell*, No. 3:10-bk-09670 (Bankr. M.D. Tenn.), Docket

No. 32. In that filing, Plaintiff argued that "The deeds of trust are void in that they are vague,

they include within the legal description inconsistent cited tracts of land that are not

ascertainable, and that signatures appearing on those document[s] are not the signatures of

Dwight Jerome Mitchell, and thereby constitute a forgery." *Id.* On April 8, 2011, the

23

Bankruptcy Court denied Plaintiff's Motion. *Id.* at Docket No. 39.

Plaintiff thereafter filed a Motion for Injunctive Relief in this action, again seeking to set aside the foreclosure sale. *Id.* at Docket No. 44. Plaintiff's Motion was denied and Citizens sold the Realty to a bona fide purchaser on May 20, 2011. *See In re Dwight J. Mitchell*, Case No. 3:09-bk-10241, Docket No. 89, Ex. A.

On June 13 ,2013, Plaintiff filed a second Motion for Injunctive Relief in this bankruptcy action, wherein he again asserted that "fraudulent actions by officers of [Citizens Bank] resulted in the preparation of deeds of trust that were vague in the property descriptions, deeds of trust on which the debtor's signature was forged and then notarized, and a pattern and practice of transactions whereby Citizens Bank provided the services of a real estate agent to represent the debtor while the same agent represented Citizens Bank, a conflict of interest." *In re Dwight J. Mitchell*, No. 3:10-bk-09670, Docket No. 54.

### 5. Case No. 3:17-cv-01155 and Case No. 18-5474

Plaintiff appealed the Bankruptcy Court's August 2, 2017 Order denying his Motion to reopen his bankruptcy case to the United States District Court for the Middle District of Tennessee. *In re Dwight J. Mitchell*, Case No. 3:09-bk-10241, Docket No. 94. The District Court affirmed the Bankruptcy Court's Order and subsequently denied Plaintiff's later Motion to Alter or Amend. *Mitchell v. Citizens Bank of Hartsville*, Case No. 3:17-cv-01155 (M.D. Tenn.), Docket Nos. 5, 15.

Plaintiff appealed the District Court's ruling to the Sixth Circuit, which affirmed and denied Plaintiff's subsequent request for an en banc rehearing. *Mitchell v. Citizens Bank of Hartsville*, Case No. 18-5474 (6th Cir. Nov. 9. 2018); *Id.* (6th Cir. Jan. 3, 2019). The Sixth

24

Circuit also awarded Citizens double its attorneys' fees and costs in defending Plaintiff's appeal, noting that "Mitchell's conduct as a vexatious litigant who has continually tried to relitigate a decades-old foreclosure, presents the unusual circumstance where this court will grant sanctions against a pro se litigant." *Id.* (6th Cir. Mar. 29, 2019), Docket No. 27-2.

### 6. Case No. 3:10-cv-00569

On June 9, 2010, Plaintiff filed Case No. 3:10-cv-00569, suing Citizens and alleging that he "did not sign a deed of correction drawn and filed with the Registrar of Deeds for Trousdale County, Tennessee in Book 82 Pages 395-402, nor did he appear before Notary Public Vanessa McKee at any time regarding this document or making his signature thereon. This signature is a forgery executed at the behest and behalf of Citizens Bank." *Id.* at Docket No. 1. Plaintiff further alleged that "The deeds of trust are void in that they are vague, they include within the legal description inconsistent tracts of land that are not ascertainable, and that signatures on those documents are not the signatures of Dwight Jerome Mitchell, and thereby constitute a forgery." *Id.* Plaintiff's action was dismissed with prejudice on January 11, 2011. *Id.* at Docket No. 16.

On October 22, 2013, Plaintiff moved to set aside the dismissal based on "sensitive but unclassified documents from the United States Department of Treasury." *Id.* at Docket No. 26. The District Court denied Plaintiff's Motion. *Id.* at Docket No. 28.

As incorporated into the filings in Case No. 3:10-cv-00569, beyond filing the bankruptcies and civil actions, Plaintiff has also: (1) brought an action against Citizens with the Equal Employment Opportunity Commission ("EEOC"), which was dismissed on March 19, 2010 (*id.* at Docket No. 13-8); (2) filed a complaint with the Tennessee Department of Financial Institutions ("TDFI"), which was rejected on October 8, 2009 (*id.* at Docket No. 13-7); (3) filed a

25

complaint with the Federal Deposit Insurance Corporation ("FDIC") (*id.* at Docket No. 13-9; and (4) filed lawsuits against Citizen in the Chancery Courts for Davidson and Trousdale Counties (*id.* at Docket Nos. 13-16, 13-17).

### 7. Case No. 3:13-cv-00569

On June 13, 2013, Plaintiff filed Case No. 3:13-cv-00569, suing Wilson Taylor, a former director and officer of Citizens Bank, Mr. Thompson, Ms. Holder, the City of Hartsville, and others. *Id.* at Docket No. 1. In this action, Plaintiff averred that he had filed a complaint with the FDIC, a complaint with the Small Business Administration "concerning the need to correct errors in Deed of Trust descriptions that plaintiff has 14.18 acres but that the amount of collateralized loan land is 5.01 acres," and numerous other complaints "that formalities of executing loan documents and Deed of trust were discrimination based on race as well as fraudulently concealed the operative terms of the agreements and lowered the value of land held by the plaintiff." *Id.* at Docket No. 13. Plaintiff also averred that Mr. Taylor "affirmatively concealed financing and refinancing information concerning loans to the plaintiff Dwight Jerome Mitchell, as well as affirmatively concealed information concerning the metes and bounds of land boundaries the bank used as a basis for determining the exact amount of acreage relied upon in unilaterally modifying existing purchase and improvement loans and related loan documents with the plaintiff Dwight Jerome Mitchell." *Id.* Plaintiff further averred that Mr. Taylor failed to disclose material facts regarding the loss of financial value in the land and again argued that his signature was forged on a deed of correction. *Id.*

On November 13, 2013, Mr. Taylor moved to dismiss Case No. 3:13-cv-00569 based on the statute of limitations and collateral estoppel. *Id.* at Docket No. 26. Thereafter, Plaintiff was

permitted to again amend his Complaint, and Plaintiff filed a second Amended Complaint on June 3, 2014. *Id.* at Docket No. 64.

On June 24, 2014, Mr. Taylor moved to dismiss Plaintiff's second Amended Complaint, arguing that Plaintiff's claims were time-barred, barred by the doctrine of collateral estoppel, and failed to state a claim for relief. *Id.* at Docket No. 65. After almost 7 months of extensions in which to respond to Mr. Taylor's Motion, Plaintiff voluntarily dismissed this action on February 17, 2015, without responding to Mr. Taylor's Motion to Dismiss. *Id.* at Docket No. 93. Following Plaintiff's voluntary dismissal, Judge Haynes "warned [Plaintiff] that any further attempts to relitigate these same issues may result in sanctions." *Id.* at Docket No. 97.

### 8.  Case No. 3:15-cv-01310, Case Nos. 16-6335, 17-05319, and Case No. 18-5886

On November 24, 2015, Plaintiff filed Case No. 3:15-cv-01310, again suing Mr. Taylor, Mr. Thompson, Ms. Holder, The City of Hartsville, and others, arguing that "Because the legal descriptions on the deeds of trust are not exact as to the property boundaries, then Citizens bank could not properly foreclose on the property without first establishing the factual integrity of the deeds and the actual value of the land that the plaintiff Dwight Jerome Mitchell owned." *Id.* at Docket Nos. 1, 48. Plaintiff reiterated his allegations against Mr. Taylor, again arguing that Mr. Taylor had concealed information from him. *Id.* Judge Sharp dismissed Plaintiff's federal claims with prejudice, finding that the statute of limitations had run on Plaintiff's federal claims and that Plaintiff "did not come close" to making a showing to toll the statute of limitations for his claim of fraudulent concealment. *Id.* at Docket No. 120. In dismissing Plaintiff's federal claims with prejudice, Judge Sharp noted, "Plaintiff has had more than enough bites at the apple." *Id.* Judge Sharp declined to exercise supplemental jurisdiction over Plaintiff's state law

claim against Mr. Taylor and therefore dismissed that claim without prejudice.  *Id.*[5]

Plaintiff appealed this case to the Sixth Circuit, but was unsuccessful and was denied en banc review.  *Mitchell v. Taylor*, Case Nos. 16-6335, 17-05319 (6th Cir.).  Plaintiff then filed a petition for writ of certiorari in the United States Supreme Court, which was denied.  *Mitchell v. Taylor*, Case No. 18-5886 (S. Ct.).  Upon denial, Plaintiff filed a petition for rehearing, which was denied on February 25, 2019.  *Id.*

### 9.  Case No. 3:18-cv-1023

In Case No. 3:18-cv-01023, the instant action, Plaintiff filed his original Complaint on October 4, 2018; his amended Complaint on February 8, 2019; and his Second Amended Complaint on April 22, 2019,[6] suing Mr. Taylor, Ms. Kimberly Taylor, Citizens Bank, the City of Hartsville, Ms. Holder, Ms. Betty Lou Taylor, Ms. McDonald, Mr. McDonald, Mr. Edmonson, Mr. DeLanis; Baker, Donelson; Michael Towns, Mr. Thompson, and Ms. Hibdon.  *Mitchell v. Taylor, et al,* Case No. 3:18-cv-01023 ("the instant action" or "the case at bar"), Docket Nos. 1, 35, 92.[7]  Plaintiff's Second Amended Complaint is the operative Complaint in this matter, the allegations of which are set forth below.

### B.  Allegations of Plaintiff's Second Amended Complaint

Plaintiff sues the following people, and avers that, at all times relevant to the instant

---

[5] Guardian Home Care Holdings, Inc., another Defendant in Case No. 3:15-cv-01310 filed a Motion for Sanctions against Plaintiff.  *Id.* at Docket Nos. 107, 108.  The Court granted that Motion, finding that Plaintiff was a vexatious litigant.  *Id.* at Docket No. 120.

[6] Plaintiff has attached 20 Exhibits to his Second Amended Complaint.  Docket Nos. 92-1 - 92-21.

[7] Plaintiff also sues Kevin Key, as Plaintiff's attorney during part of the underlying proceedings, but Mr. Key has not been served and no appearance has been made on his behalf.

action, they served the following roles:

1.  Wilson Taylor, as the president of Citizens Bank of Hartsville, Tennessee.

2.  Kimberly Taylor, as the Circuit Court Clerk for Hartsville, Tennessee.

3.  Mary Holder, as the Register of Deeds for Trousdale County and as a member of the zoning board.

4.  Hattie McDonald, as a County Commissioner and member of the charter review board that set policies for the City of Hartsville.

5.  James McDonald, as a member of the zoning board.

6.  Betty Lou Taylor, as City Attorney for Hartsville, Tennessee, trustee for the City of Hartsville, and trustee for Citizens Bank. Plaintiff also avers that she "assigned herself and her assigns the deed of correction on Plaintiff's property in 1996 and the deed of trust on Plaintiff's property in 2002, and that she charged Plaintiff for title insurance which was never actually given to him.

7.  Larry Edmonson, as a bankruptcy trustee who represented both Citizens Bank as a creditor to Plaintiff in bankruptcy and Alternative Healthcare Solutions, Inc. as a debtor to Plaintiff in bankruptcy.

8.  James DeLanis, as an attorney employed by Baker, Donelson.

9.  Baker, Donelson, as a law firm that employed and supervised James DeLanis.

10. Michael Towns, as the purchaser of the foreclosed upon Realty at issue.

11. Tommy Thompson, as a board member of Citizens Bank.

12. Betty Sue Hibdon, as an officer and later president of Citizens Bank.

29

Docket No. 92.

Plaintiff asserts that he brings suit under 42 U.S.C. § 1983 for the "deprivation" of his First Amendment right to access to the courts, and "deprivation" of his rights guaranteed by the due process and equal protection clauses of the "fourteenth amendment and the fourth amendment to the United States Constitution." *Id.* Plaintiff also "invokes the supplemental jurisdiction of the United States District Court for common law and statutory state tort claims." *Id.*

The "facts" as alleged in that section of Plaintiff's Second Amended Complaint are as follows:

> 57. The gravamen of Plaintiff's action is that Citizens Bank, through its agents and with its co-conspirators, engaged in a pattern of fraudulent transactions that culminated in the illegal taking of Plaintiff's property in 2013. The action accrued in 2013 because according to Tennessee law, actions for the taking of real property accrue when the deed is recorded. T.C.A. 28-2-103. While Defendant Citizens Bank claims to have foreclosed in 2011, the deed that was recorded was recorded as *802 McMurry Blvd.* (Exhibit [11]: Michael Towns Warranty Deed page 1). But the loans made by Defendant Citizens Bank to Plaintiff were all for *700 McMurry Blvd.* (Exhibit [12]: Miscellaneous Communications With Citizens Bank page 5).

> 58. In a previous action, Plaintiff alleged that Wilson Taylor, Citizens Bank, and state actors from the City of Hartsville and Trousdale County conspired to illegally take Plaintiff's property and fraudulently concealed facts related to this illegal act.

> 59. In that action Plaintiff was allowed to represent himself without an attorney, even though the district court required the removal of Sun Valley Home for the Aged and Plaintiff's minor daughter as co-plaintiffs as they were not represented by an attorney.

30

60.    Plaintiff had previously attempted to file an action with the City of Hartsville in 2012 to have person(s) that were illegally occupying Plaintiff's property through actions taken by Citizens Bank removed but employees of the City of Hartsville refused to allow the action to be filed. (See Exhibit 1 of original complaint).

61.    This District Court ultimately held that Plaintiff had a state law cause of action against Defendant Wilson Taylor for fraudulent concealment.  (Case 3:16-cv-01310 doc 88 page id # 893, 894)(Case 3:16-cv-01310 doc 98 page id # 983).

62.    In January 2018, Plaintiff attempted to file against Defendant Wilson Taylor and Citizens Bank in circuit court for Trousdale County Tennessee on the state cause of action.  All the facts mentioned in that case are incorporated by reference.  (See Exhibit 2 of the original complaint).

63.    The court clerk initially told him that a judge would have to approve his pauper's oath and "lodged" the complaint rather than filed it.

64.    The court clerk or someone in the court clerk's office told Plaintiff over the phone that the pauper's oath had been denied.  When Plaintiff asked how much it would cost to file the employee refused to answer the question and instead told Plaintiff that the judge said there were mistakes in the filing and that he would have to get a lawyer to file it.

65.    Plaintiff called back on a different date and recorded an employee in the court clerk's office again stating that he would not be allowed to file his complaint and that she would not even tell him how much it cost to file the complaint. (See Exhibit 3 of original complaint).

66.    The Plaintiff asked six (6) times for a copy of the judge's order denying the pauper's oath but his questions were ignored each time. (See Exhibit 3 of original complaint).

67.    Plaintiff, in that same phone call, twice asked how much he needed to file the case.  *Id.*

68. The Clerk's office responded by stating "Your phone is kind of breaking up." *Id.*

69. The Plaintiff again twice asked for an order so that he could refile, stating "I filed a civil summons and lodged it on 1/11/2018. I called and they told me that the judge had denied the pauper's oath. I have not received an order from the judge so I can refile it. And I'm trying to find out what happened where the order has not been sent." *Id.*

70. The Clerk's office stated that only his copy would be sent, but no order by a judge, specifically stating "Umm... did ... We just want to let you know that we have your copy up here and the judge did not sign it because ... ummm ... (inaudible) ... it was incomplete and improper." *Id.*

71. The Clerk's office again, never addressed the order and only promised to send Plaintiff his copy of the lodged complaint but suggested that even that might get "lost in the mail" after which Plaintiff indicated a desire to appeal. *Id.*

72. Ultimately all that the Clerk's office sent was Plaintiff's lodged complaint, but no order signed by a judge. The return address said "Kimberly Taylor." (Exhibit 6: Envelope of lodged complaint.)

73. Plaintiff, in his complaint, raised allegations of fraud against Citizens Bank, its agents and co-conspirators which he is expounding on in this lawsuit.

74. Defendant Citizens Bank's attorney Larry Edmonson committed fraud by denying to have represented Alternative Healthcare Solutions Inc., a corporation that rented from Plaintiff after his assistant living [*sic*] facility was closed. (Clerk's inquiry Case 3:09-ap-00146 doc 9 page 1). That is a conflict because Plaintiff could have used money from Alternative Healthcare Solutions Inc to pay debts owed including any debt that might have been owed to Citizens Bank.

75. Defendant Larry Edmonson was a U.S. Bankruptch [*sic*] Court trustee and he filed against Plaintiff in Bankruptcy

32

Court.

76. Plaintiff only recently found proof that Larry Edmonson represented Alternative Healthcare Solutions Inc by going through every document in that case. The case file said Alternative Healthcare Solutions Inc was not represented by an attorney but one document filed in the case referenced Larry Edmonson as their attorney.

77. Defendant James A. DeLanis committed fraud on the court by claimant that Plaintiff did not live on the property 700 McMurry Blvd at the time the loans were made in order to get out from under the Truth in Fair Lending Act. (Memorandum of Law in Support of Motion to Dismiss Case 3:10-cv-00569 Document 13 page 7-8).

78. Judge William Haynes had issued an order stating in part "The Court has reviewed the instant complaint and finds that it contains at least one colorable claim under the Truth in Lending Act and the Fair Housing Act. 28 U.S.C. § 1915(e)(2)." (Order case 3:10-cv-0569 doc 6 page 2.)

79. Plaintiff addressed the fraud in his motion to set aside dismissal where he plainly laid out the facts showing that he indeed lived on the property in question at the time the loans were made. (Motion to Set Aside Dismissal Case 3:10-cv-00569 doc 26 page 5 also recorded as Case 3:09-bk-10241 doc 87).

80. Defendant James Delanis took the highly unusual and ethically questionable action of requesting a specific judge, Judge Haynes, in another case. (Motion to Transfer Case to Docket of Judge William Haynes Jr. Case 3:13-cv-00569 doc 27).

81. Supposedly quoting from *U.S. ex rel Tomlin v. Royco, Inc.,* attorney Delanis stated "[We] find that it would be appropriate for any of the named defendants in this action or any associated persons or entities to be assigned to the same District Judge and Magistrate Judge assigned to the instant case as a 'related case.'" *US Ex Rel. Tomlin v. Royco, Inc.,* , 14 [*sic*] (MD Tenn. 2010) (*id* at page 2). Those words, however, are not in that case nor can Plaintiff

33

find them anywhere on Westlaw or Google Scholar.

82. Defendant reasoned "Judge Haynes already heard the Citizens Lawsuit, familiarized himself with the issues, and issued a final ruling on the merits." (*Id.* at page 3). The case Defendant mis-referenced is simply talking about consolidating two ongoing cases as opposed to a party asking for a case to be transferred to a judge who has ruled favorably for him in another case. In federal court one of the grounds for recusal is when a judge "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." *Liteky v. United States*, 510 US 540, 547 (1994) 48 U.S.C. 455. While plaintiff is not suggesting that a judge who ruled on one case can never be a judge in a related case, surely previously ruling on a case is not an appropriate reason for *requesting* a particular judge.

83. In Plaintiff's first Chapter 13 filing, trustee Henry Hilderbrandt III filed a motion to dismiss for failure to file a plan but that motion was denied which signified that Plaintiff did not have to file a plan as there were no secured creditors. (Case 3:09-bk-04976 Document 21) (Exhibit [15]: Order Denying Bankruptcy Trustee Motion to Dismiss pages 1-2.

84. Plaintiff's attorney, Kevin Key, never informed Plaintiff that the trustee's motion to dismiss was denied but instead moved to transfer the bankruptcy from chapter 13 to chapter 11 to the detriment of Plaintiff. (Exhibit [7]: Kevin Key Motion to Convert to Chapter 11 page 1).

*Id.* at 11-16 (Emphasis original).

With regard to Defendants Kimberly Taylor and the City of Hartsville, Plaintiff avers:

88. In this case, the actions by the court clerk denying Plaintiff the right to even file a lawsuit without first obtaining a lawyer, when Plaintiff was representing himself is a denial of Plaintiff's constitutional rights of access to the courts.

89. Plaintiff asks this court to take judicial notice of the possible familial relationship between Defendant Kimberly

34

Taylor, circuit court clerk for Trousdale County, and Defendant Wilson Taylor, president of Citizens Bank of Hartsville.

90.    Defendant City of Hartsville exercised supervisory country [*sic*] over Defendant Kimberly Taylor.

91.    Defendant Trousdale County Metropolitan Government has shown of pattern [*sic*] or custom of violating access to the courts by not allowing Plaintiff due process in 2012 in seeking eviction against Defendant Michael Towns and not allowing Plaintiff in2018 to file a state cause of action against Defendants Citizens Bank and Wilson Taylor even though this Court stated that Plaintiff had such a state law cause of action.

*Id.* at 16-17.

As to Betty Lou Taylor, Plaintiff avers:

96.    Betty Lou Taylor represented Citizens Bank in bankruptcy proceedings against Dwight Mitchell.

97.    Betty Lou Taylor assigned to herself and to her assigns the deed of trust for Dwight Mitchell's property and did so as the trustee for the City of Hartsville (aka Trousdale County Metropolitan Government).

98.    Betty Lou Taylor charged Plaintiff for doing a title search and for title insurance. (Exhibit [19]: Title Insurance Fee Form pages 1-3).

99.    Betty Lou Taylor prepared a document that falsely claimed that Plaintiff declined title insurance but that document is not signed. (Exhibit [19]: Title Insurance Fee Form page 4).

100.    Even though Betty Lou Taylor charged Plaintiff for title insurance, she did not actually purchase title insurance on his behalf. (Exhibit [18] : Stewart Title Letter August 2010 pages 1-2).

101.    Betty Lou Taylor was aware Larry Edmonson was hired to

35

represent Citizens Bank in bankruptcy and was part of the hiring.

102. Betty Lou Taylor knew that after the closure of Mr. Mitchell's facility in 2008, Mr. Mitchell still had income coming from a renter Alternative Healthcare Solutions Inc.

103. Betty Lou Taylor knew Larry Edmonson also represented Alternative Healthcare Solutions Inc in proceeding against Dwight Mitchell where they were attempting to avoid paying him back rent.

104. Betty Lou Taylor knew James Delanis was also hired to represent Citizens Bank in bankruptcy and you were part of the hiring.

105. Betty Lou Taylor knew that on [sic] Judge Marian Harrison denied trustee Hildberbrandt's motion to dismiss Dwight Mitchell's Chapter 13 bankruptcy for failure to submit a plan and this signified that no plan needed to be filed because Citizens Bank was not a secured creditor.

106. Betty Lou Taylor knew that Citizens Bank was never a secured creditor or provide [sic] evidence that shows why Citizens Bank could possibly be a secured creditor without having insurable title.

107. Betty Lou Taylor sold the property in question to Citizens Bank for $25,000 and in that sale listed herself as the trustee for Citizens Bank when on the trust deed she had been listed as the trustee for the City of Hartsville. (Exhibit [3] : Betty Lou Taylor Sale of Property To Citizens Bank pages 1-2).

*Id.* at 18-19.

With respect to Defendants Wilson Taylor, Citizens Bank, Betty Lou Taylor, Betty Sue Hibdon, and Tommy Thompson, Plaintiff avers:

**Defendant Wilson Taylor and Citizens Bank**

108. Wilson Taylor at all times relevant to this case was the

36

president of Citizens Bank.

109.  Bank President Wilson Taylor knew that the property description for the $200,000.00 SBA loan # GP-784826 30 06-NASH dated February 21, 1995 was incorrect. (Exhibit [17]: SBA Loan Documentation page 6).

(a)  The original deed of Plaintiff's property was two tracts of land, tract #1 6.7 [was] acres more or less and tract #2 was 7.48 acres more or less, totalling to around 14.18 acres. (Exhibit [17]: SBA Loan Documentation page 1).

(b)  The Dillehay survey, reference by Citizens Bank for February 21, 1995 loan # GP-784826 30 06-NASH, showed four tracks [sic], two tracts labeled Tract # 1 with 5.10 acres and Tract #2 with 9.25 acres, a third containing the Sun Valley Home For The Aged building, and a fourth track [sic] with writing that is illegible from the fax sent by Citizens Bank. (Exhibit [17] : SBA Loan Documentation pages 4, 9). It also contains fine print that is too small to see from the fax but that Plaintiff recalls stated that the surveyor could not guarantee the meets and bounds of the property.

(c)  The 5.10 acres in the Dillehay survey are described as touching "a courner [sic] to the Trousdale County Board of Education" and that the "line of said Board of Education" is described as "severing the Mitchell property for the next 2 calls." (Exhibit [17]: SBA Loan Documentation page 9).

(d)  There is no mention of the Board of Education property in the original deed property description. (Exhibit [17]: SBA Loan Documentation page 1).

(e)  The fourth track [sic] on the Dillehay survey is the same 1.002+ tract that is labeled by Citizens Bank as "Survey by Darnell, surveying off 1 acre, released by SBA, then we made loan for." (Exhibit [17]: SBA Loan Documentation page 5). The Darnell survey also contains fine print that is too small to

37

see from the fax but that Plaintiff recalls stated that the surveyor could not guarantee the meets and bounds of the property.

(f) Adding up all of the acreage of the total property description used by Citizens Bank for loan # GP-784826 30 06-NAS is 16.37+ acres.

110. Bank President Wilson Taylor knew that the property description for the $50,000.00 for the SBA loan # GP-784826 30 06-NAS dated November 26, 1996 was incorrect. (Exhibit [17]: SBA Loan Documentation page 10).

(a) Bank President Wilson Taylor caused a deed of trust was [*sic*] executed for that loan on February 21, 1997. (Exhibit [17]: SBA Loan Documentation page 13).

(b) The trustee was Betty Lou Taylor. *Id.*

(c) The trust document stated "The purpose of this Deed of Trust is to clarify the legal description of the Deed of Trust recorded in the Trust Deed Book 78, page 124, Registrar's Office of Trousdale County, Tennessee. *Id.*

(d) The trust document was signed and notarized, but not witnessed. (Exhibit [17]: SBA Loan Documentation page 14).

(e) The property description included two tracts of land, Tract #1 of 6.7 acres and Tract #2 of 7.48 acres. (Exhibit [17]: SBA Loan Documentation 16).

(f) The property description gave an exclusion for the 5.10 acres surveyed off by Jackie Dillehay and the 1.002 acres surveyed off by John T. Darnell. (Exhibit [17]: SBA Loan Documentation page 17, 18).

(g) But then the property description added the 5.10 acres surveyed off by Jackie Dillehay. (Exhibit [17]: SBA Loan Documentation 18).

38

(h) The deed of trust contains a reference to Board of Education property that was not in Plaintiff's original warranty deed. (Exhibit [17] :SBA Loan Documentation 1, 16).

111. Bank President Wilson Taylor knew that the property description and loan description for the $63,000.00 SBA loan #GP-523735 4007-NASH February 26, 2002 and the $22,000.00 loan with Citizens Bank were incorrect. (Exhibit [17]: SBA Loan Documentation page 21).

(a) The original loan was supposed to be one (1) SBA loan of $85,000.00 (Exhibit [17]: SBA Loan Documentation pages 21, 23).

(b) Bank President Wilson Taylor requested that the SBA reduce their part of the loan from $85,000.00 to $63,000.00. (Exhibit [17]: SBA Loan Documentation 23).

(c) The executive committee and board of Citizens Bank approved the $63,000.00 loan. (Exhibit [17]: SBA Loan Documentation 23).

(d) The collateral for the Citizens Bank loan was to be "80% of the appraised value on 1 acre tract on 700 McMurry Blvd., Hartsville, TN" and the "Balance of the $85,000.00 funded as SBA guaranteed loan." (Exhibit [17]: SBA Loan Documentation 22).

(e) The loan documents included a deed of trust to Betty Lou Taylor for 1.002 acres. (Exhibit [17]: SBA Loan Documentation page 26).

(f) The loan documents also included a deed of trust to Betty Lou Taylor for 6.7 and 7.48 acres and excluding and [sic] unspecified amount of acreage which is cut off halfway through the description. (Exhibit [17]: SBA Loan Documentation page 27 compare with page 17).

(g) The loan documents property description appears to have the same inclusion of a reference to Board of

39

Education property that was missing from the original deed warranty deed to Plaintiff but is in a trust deed for each loan made by Citizens Bank. (Exhibit [17]: SBA Loan Documentation pages 1, 9, 16, 17, 27).

(h) Defendant Wilson Taylor misled Plaintiff and his wife to sign a documents [*sic*] that they were told were only about hazardous materials but in fact extended the loan to cover the entire property which was worth far more than the loan value. (Exhibit [4]: Betty Lou Taylor Trust Deed 2002 pages 1 and 2).

(i) The real value of the property was actually in excess of $680,000.00 (Exhibit [5]: Evidence of Redlining 2).

112.    On January 15, 2013, Plaintiff received from the U.S. Treasury Department a document labeled "Sensitive But Unclassified" that stated that "The lender failed to secure the proper lien but the action does not cause harm since the assets were abandoned." but Plaintiff could not have known this prior without such an expert opinion. (Exhibit [20]: U.S. Treasury Department Documentation page 2).

113.    Bank President Wilson Taylor fraudulently extended the property that was to secure the loan from the original description that didn't include the house to actually include the house.

**Citizens Bank and Betty Sue Hibdon**

114.    Bank President Betty Sue Hibdon committed fraud in bankruptcy court by claiming that Citizens Bank as [*sic*] a secured creditor.

115.    Bank President Betty Sue Hibdon knew that the correct address of Plaintiff's property was 700 McMurry Blvd. (Exhibit [12]: Miscellaneous Communications With Citizens Bank page 5).

116.    Bank President Betty Sue Hibdon was aware of the hiring of attorney Larry Edmonson to represent Citizens Bank in bankruptcy court.

117. Bank President Betty Sue Hibdon knew, or should have known, that Larry Edmonson also represented Plaintiff's tenant Alternative Healthcare Solutions Inc that was many months behind in paying rent prior to Plaintiff filing for bankruptcy and was refusing to vacate the premises. (Exhibit [13]: Modification Of Contract With Alternative Healthcare Inc. page 1); (Exhibit [8]: Kevin Key TBPR Letter pages 1-2).

118. Bank President Betty Sue Hibdon also knew, or should have known, that when Alternative Healthcare Solutions Incl finally moved out, they stripped the premises of personal property. (Exhibit [8]: Kevin Key TBPR Letter page 2).

119. Bank President Betty Sue Hibdon also knew, or should have known, that after Alternative Healthcare Solutions Inc. moved out, Plaintiff secured another tenant Hartsville Daycare & Preschool, that also might have covered the payments allegedly due the bank. (Exhibit [8]: Kevin Key TBPR Letter 2); (Exhibit [14]: Motion to Approve Lease 3).

120. Bank President Betty Sue Hibdon in 2011 falsely represented to the Small Business Administration that Plaintiff became "uncooperative" with trying to lease or sell his property when the truth is that her lawyer had interfered with his attempts to lease the property. (Exhibit [20]: U.S. Treasury Department Documentation page 5 and 6).

121. Plaintiff had no way of discovering the false statements Betty Sue Hibdon made to the U.S. Treasury Department before 2013 when he received the communication from the U.S. Treasury Department as he was not copied on them. (Exhibit [20]: U.S. Treasury Department Documentation pgaes 1; 5-8).

122. In reviewing these documents, Plaintiff discovered that Citizens Bank had committed by [sic] claiming that the loans included the facility when in fact the property including the facility had been specifically excluded.

123. In 2011, Bank President Betty Sue Hibdon sold the property

purported to be that of Plaintiff, to Defendant Michael Towns but recorded the transaction as *802 McMurry Blvd, Hartsville TN, 37074*. (Exhibit [11] : Michael Towns Warranty Deed page 1).

124.  Bank President Betty Sue Hibdon in 2013 knew of and/or participated in changing the address back to 700 McMurry Blvd.

125.  Bank President Betty Sue Hibdon was aware of and participated in the hiring of attorney James Delanis to represent Citizens Bank in bankruptcy.

126.  Bank President Betty Sue Hibdon knew, or should have known, that James Delanis was committing fraud on the court when he falsely claimed that Plaintiff did not live at the property in question when the loans were made in order to get out from under the Truth In Lending Act. (Case 3:10-cv-00569 Document 13 Pages 7 and 8).

127.  Bank President Betty Sue Hibdon knew, or should have known, that Kevin Key, the attorney that at one time represented Plaintiff in proceedings against Citizens Bank, also worked for Stewart Title Company which had Citizens Bank as a client.

128.  Bank President Betty Sue Hibdon had a duty to disclose in bankruptcy court that Citizens Bank was not secured creditors [*sic*] and therefore did not have a right to relief from stay.

129.  Bank President Betty Sue Hibdon had a duty to disclose to their attorney, Larry Edmonson, who was a U.S. Bankruptcy Trustee, also represented Alternative Healthcare Solutions Inc., Plaintiff's tenant who's [*sic*] refusal to pay is what caused him to go into bankruptcy.

130.  Bank President Betty Sue Hibdon had a duty to disclose address changes of Plaintiff's property from 700 McMurry Blvd to 802 McMurry Blvd and back to 700 McMurry Blvd.

131.  Bank President Betty Sue Hibdon foreclosed on the

42

plaintiff Dwight Mitchell's property without first establishing the factual integrity of the deeds and the actual value of the land that the plaintiff Dwight Jerome Mitchell owned and the equity he had in the property at the time of foreclosure.

132. Bank President Betty Sue Hibdon illegal [*sic*] foreclosed on the property in 2011, knowing they were not a secured creditor and in violation of bankruptcy law as laid out in *CC Holdings* which states that to be valid a deed "must designate the land intended to be conveyed with reasonable certainty." *CC Holdings, In re Tennessee Gas Transp., Inc.,* 169 BR 643, 644 (Bankr. Court, MD Tennessee 1994).

*Id.* at 19-26 (footnotes omitted).

Incorporating by reference the "lawsuit that he attempted to file in Trousdale County Circuit Court" and "his appeal briefs and reply briefs in the Sixth Circuit Court of Appeals" cases, Plaintiff also asserts a "fraudulent conversion of real property" claim against Defendants Citizens Bank, Wilson Taylor, Betty Sue Hibdon, Betty Lou Taylor, and Michael Towns as follows:

176. Defendants Citizens Bank, Wilson Taylor, Betty Lou Taylor and Betty Sue Hibdon had loans based on titles that could not be insured because the property descriptions were not correct and did not designate the land with any reasonable certainty.

177. Defendants Citizens Bank, Wilson Taylor, Betty Lou Taylor and Betty Sue Hibdon fraudulently obtained relief from stay in bankruptcy because as [*sic*] as they were not secured creditors but claimed to be.

178. Defendants Citizens Bank, Wilson Taylor, Betty Lou Taylor and Betty Sue Hibdon took all of Plaintiff's property when their loans only covered a part of it.

179. Defendants Citizens Bank, Betty Lou Taylor and Betty Sue Hibdon sold Plaintiff's property as 802 McMurry Blvd

when the actual address was 700 McMurry Blvd.

180.    In 2013 Defendants Citizens Bank, Betty Lou Taylor and Betty Sue Hibdon fraudulently changed the address back to 700 McMurry Blvd.

. . .

186.    Defendant Betty Lou Taylor exercised control over Plaintiff's property as she assigned loans to herself in trust as trustee for the City of Hartsville and ultimately sold the property in question to Citizens Bank and ultimately she financially benefits when she received payment of at least $25,000.00 from Citizens Bank's purchase of part of Plaintiff's property from her.

187.    Defendant Tommy P. Thompson was on the executive board of Citizens Bank at all times relevant to this complaint and gave oversite [*sic*] to the loans and the foreclosures in question.  (Exhibit [3]: Betty Lou Taylor Sale of Property To Citizens Bank page 1).

*Id.* at 32-34.

Turning to Plaintiff's averments against Defendant Larry Edmonson, Plaintiff alleges:

133.    Defendant Larry Edmonson concealed the fact that he worked for both Alternative Healthcare Solutions Inc., who's [*sic*] default on rental payments caused the Plaintiff to go into bankruptcy, and Citizens Bank, a creditor against Plaintiff in bankruptcy.  (Case 3:09-ap-00146 Document 9 page 1); (Exhibit [10]: Letter From U.S. Trustee's Office page 1).

134.    Defendant Larry Edmonson concealed the fact that Citizens Bank was not a secured creditor and therefore should not have been granted relief from stay in bankruptcy.

*Id.* at 26.

Plaintiff later argues:

162.    Defendant Larry Edmonson had a legal and ethical duty to

44

disclose his conflict of interest. Mr. Edmonson also corrupted the bankruptcy court through his position as a trustee and evidenced by the inconsistency in the bankruptcy court records.

. . .

181. Defendant's lawyer Larry Edmonson, a U.S. Bankruptcy Trustee, engaged in a conflict of interest by both representing Citizens Bank of Hartsville and representing Plaintiff's tenant Alternative Healthcare Solutions Inc. who had refused to pay Plaintiff rent money due. This was done to prevent Plaintiff for [sic] having the funds Defendants falsely claimed he owed them.

182. Defendant's lawyer Larry Edmonson committed fraud on the court by telling the U.S. Trustee's office that he did not represent Alternative Healthcare Solutions Inc. Plaintiff was only able to discover this through due diligence in 2018 when he had access to PACER and could look through all of the documents. While the bankruptcy court records officially show Alternative Healthcare Solutions was not represented by council, Plaintiff found 1 document in the bankruptcy court records that has Larry Edmonson's name listed as the attorney for Alternative Healthcare Solutions Inc.

*Id.* at 30, 33.

Plaintiff additionally asserts a tortious interference with contracts claim against Mr. Edmonson, arguing that "Plaintiff had a contractual relationship with Alternative Healthcare Solutions Inc. for rent of his property" in an amount that "was sufficient for Plaintiff to pay the debt that Defendant Citizens Bank fraudulently claimed Plaintiff owed." *Id.* at 31, ¶¶ 166, 167. Plaintiff avers:

168. Defendant Larry Edmonson, a bankruptcy trustee and a lawyer for Citizens Bank, knowingly represented Alternative Healthcare Solutions Inc., a debtor to the Plaintiff, in proceedings that ultimately resulted in

interference with Alternative Healthcare Solutions, Inc. contractual obligations to Plaintiff.

169. As a result of this tortious interference, Plaintiff suffered loss of rental income and ultimately loss of his property.

*Id.* at 31.

With respect to Plaintiff's averments against Defendants Baker Donelson and James DeLanis, Plaintiff asserts:

135. Defendant James DeLanis at all times relevant to these proceedings was employed by Defendant Baker Donaldson [*sic*], Beraman [*sic*], Caldwell & Berkowitz who exercised control and supervisory capacity over Defendant James DeLanis and are therefore liable for his actions under the doctrine of respondeat superior.

136. Defendant James DeLanis committed fraud on the court by falsely claiming that Plaintiff Dwight Mitchell did not live on the property in question at the times the loans which Citizens Bank used for foreclosure were executed and then fraudulently concealed this fact even after it was brought to his attention. Defendant DeLanis committed this fraud in order to get out from under the Truth in Lending Act. (Case 3:10-cv-00569 Document 13 Pages 7 and 8).

137. Defendant James DeLanis took the ethically questionable action of asking for a specific judge, Judge Haynes, in a case against Plaintiff using the argument that Judge Haynes [*sic*] familiarity with the case by ruling in his favor meant he was the most appropriate judge to hear the new case. This is especially troubling considering the fact that the case Defendant DeLanis referenced is the same one in which he committed fraud on the court. (Case 3:13-cv-00569 Document 27).

138. Other attorneys working for Defendant Baker Donaldson [*sic*] were made aware of these facts and did nothing to correct the problem.

*Id.* at 26-27.

46

Plaintiff argues:

163.    Defendant James DeLanis had a duty to tell the truth regarding Plaintiff living on the property in question at the time the loans were made. His breach of this duty caused a violation of Plaintiff's due process rights when Judge Haynes, after first stating that Plaintiff had a cause of action under the Truth In Lending Act, later threw out that claim.

164.    Defendant Baker Donaldson [*sic*] Bearman Caldwell & Berkowitz exercised supervisory control over Defendant James Delanis at all times relevant to this case and was aware, or should have been aware, of Defendant Delanis' fraud.

*Id.* at 31.

Regarding his allegations against Defendant Mary Holder, Plaintiff avers:

139.    Defendant Mary Holder was both register of deeds and on the zoning board when Plaintiff's address was changed from 700 McMurry Blvd to 802 McMurry Blvd.

140.    Defendant Mary Holder went along with these address changes even though she knew or had reason to know they were fraudulent.

141.    Defendant Mary Holder recorded these and other fraudulent deeds even though she knew or had reason to know they were fraudulent.

142.    Defendant Mary Holder recorded a deed of correction that was notarized but not witnessed. (Exhibit [17]: SBA Loan Documentation page 14).

. . .

197.    Defendant Mary Holder actively participated in the fraudulent conversion through actions she took on the zoning board and as registrar with respect to the fraudulent changes of address of Plaintiff's property and the recording of those changes and other fraudulent deeds by Defendant Citizens Bank.

*Id.* at 27, 36.

As to his allegations against Defendants Hattie McDonald and James McDonald, Plaintiff avers:

### Defendant Hattie McDonald

143. Defendant Hattie McDonald was a County Commissioner for Trousdale County at times relevant to these proceedings.

144. Defendant Hattie McDonald was a member of the Charter Review Committee at times relevant to these proceedings.

145. Defendant Hattie McDonald used to rent the property addressed as 700 McMurry Blvd and therefore knew what the proper address should be.

146. Defendant Hattie McDonald knew, or had reason to know, that it was improper for the address of the property in question to be changed form 700 McMurry Blvd to 802 McMurry Blvd at [*sic*] back but actively concealed this fact.

### Defendant James McDonald

147. Defendant James McDonald was a County Commissioner for Trousdale County at times relevant to these proceedings.

148. Defendant James McDonald was a member of the zoning board at times relevant to these proceedings.

149. Defendant James McDonald knew, or had reason to know, that it was improper for the address of the property in question to be changed from 700 McMurry Blvd to 802 McMurry Blvd at [*sic*] back but actively concealed this fact.

150. Defendant James McDonald falsely told Plaintiff as recently as 2018 that he was not on the zoning board at the time the address changes were made even though the

48

records show that ye [*sic*] was.

*Id*. at 28-29.

Plaintiff later avers:

> 196. Defendant Hattie McDonald tried to get Plaintiff to rezone his property prior to the loans in question being made.
>
> . . .
>
> 198. Defendants James McDonald and Hattie McDonald actively participated in the fraudulent conversion through actions she took on the zoning board and charter review committee and as county commissioners with respect to the fraudulent changes of address of Plaintiff's property.

*Id.* at 36.

Regarding Defendant Michael Towns, Plaintiff avers:

> 151. Defendant Michael Towns actively participated in fraudulently concealing the fraudulent changes of address to the property.
>
> . . .
>
> 188. Defendant Michael Towns actively participated in the fraudulent conversion of Plaintiff's property by knowingly receiving property that he knew or should have known was stolen and by going along with the fraudulent changes of address to the property.
>
> 189. Defendant Michael Towns has been and currently is in illegal possession of Plaintiff's property and owes Plaintiff rent from the time he took possession. (Exhibit [11]: Michael Towns Warranty Deed page 1).

*Id.* at 28, 34-35.[8]

---

[8] Because Kevin Key has not been served, the undersigned will not recount paragraphs 152-159 of Plaintiff's Second Amended Complaint, as those paragraphs contain Plaintiff's factual allegations against Mr. Key. *See* Docket No. 92, pp. 29-30.

Addressing the running of the statute of limitations, Plaintiff avers:

183. Citizens Bank claims to have foreclosed in 2011.

184. Going by Citizen Bank's earliest date, the statute of limitations didn't run until the middle of 2018 and Plaintiff attempted to file a lawsuit in state court in January 2018.

185. Going by the correct date of accrual, 2013, the statute of limitations does not run until 2020.

*Id.* at 34.

### III. Law and Analysis

### 1. Fed. R. Civ. P. 8(a) and 9(b)

Fed. R. C iv. P. 8 sets forth the general rules of pleading as follows:

> **(a) Claim for Relief.** A pleading that states a claim for relief must contain:
> **(1)** a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
> **(2)** a short and plain statement of the claim showing that the pleader is entitled to relief; and
> **(3)** a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed. R. C iv. P. 8(a).

Fed. R. Civ. P. 9 sets forth heightened pleading standards in certain enumerates

circumstances, including fraud:

> **(b) Fraud or Mistake; Conditions of Mind.** In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Fed. R. Civ. P. 9(b).

50

## 2. Statutes of Limitation

Plaintiff's primary claims sound in fraud, fraudulent concealment, and fraudulent conversion of real property.

Tenn. Code Ann. § 28-3-105 provides:

> The following actions shall be commenced within three (3) years from the accruing of the cause of action:
>
> (1)    Actions for injuries to personal or real property;
>
> (2)    Actions for the detention or conversion of personal property; and
>
> (3)    Civil actions based upon the alleged violation of any federal or state statute creating monetary liability for personal services rendered, or liquidated damages or other recovery therefor, when no other time of limitation is fixed by the statute creating such liability.

The limitations period is subject to the "discovery rule"; therefore, the limitations period begins to run when a plaintiff either has actual knowledge of a claim or has actual knowledge of "facts sufficient to put a reasonable person on notice that he has suffered an injury as a result of wrongful conduct." *Redwing v. Catholic Bishop for the Diocese of Memphis*, 363 S.W. 3d 436, 459 (Tenn. 2012).

With respect to pendent state law claims, Tenn. Code Ann. § 28-1-115 provides that "any party filing an action in a federal court that is subsequently dismissed for lack of jurisdiction shall have one (1) year from the date of such dismissal to timely file such action in an appropriate state court."

Regarding Plaintiff's claims asserted under 42 U.S.C. § 1983, the relevant statute of

51

limitations is that set forth in Tennessee law for personal-injury torts, which is one (1) year. *Wallace v. Kato,* 549 U.S. 384, 387 (2007); Tenn. Code Ann. § 28-3-104.

### 3.  Res Judicata and Collateral Estoppel

#### A.  Res Judicata

*Res judicata* is a "[r]ule that a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand or cause of action [.]" *Richardson v. Tenn. Bd. Of Dentistry*, 913 S.W.2d 446, 459 (Tenn. 1995) (alteration in original), *quoting* Black's Law Dictionary 1172 (5ᵗʰ ed.1979).  It is a claim preclusion doctrine that prohibits a subsequent lawsuit between the same parties with respect to all issues that were or could have been litigated in a previous suit.  *Massengill v. Scott,* 738 S.W.2d 629, 631 (Tenn. 1987).

#### B.  Collateral Estoppel

Collateral estoppel is a rule of issue preclusion.  It bars the "relitigation of an issue in a new action arising between the same parties or their privies when the earlier proceeding resulted in a valid final judgment and the issue in question was actually and necessarily determined in that prior proceeding."  *Leahy v. Orion Twp.*, 269 Mich. App. 527, 711 (Mich. App. 2006).  "A decision is final when all appeals have been exhausted or when the time available for an appeal has passed."  *Id.*

Thus, in order to prevail on a collateral estoppel claim, the party invoking estoppel must demonstrate the following: (1) the issue to be precluded is identical to an issue decided in an

52

earlier proceeding; (2) the issue to be precluded was actually raise, litigated, and decided on the merits in the earlier proceeding; (3) the judgment in the earlier proceeding has become final;

(4) the party against whom collateral estoppel is asserted was a party or is in privity with a party to the earlier proceeding; and (5) the party against whom collateral estoppel is asserted had a full and fair opportunity in the earlier proceeding to contest the issue now sought to be precluded. *See, e.g., Mullins v. State*, 294 S.W.3d 529, 535 (Tenn. 2009).

### 4. Fed. R. Civ. P. 12(b)(6)

Fed. R. Civ. P. 12(b)(6) provides that a claim may be dismissed for failure to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory. *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005). Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. *Id.*

The court will construe the complaint in the light most favorable to the nonmoving party, accept its allegations as true, and draw all reasonable inferences in favor of the nonmoving party. *See Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require only that the pleadings contain "a short and plain statement of the claim" that will provide fair notice of what the claims are and the grounds upon which they rest. *See* Fed. R. Civ. P. 8; *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

A complaint containing a statement of facts that merely creates a suspicion of a legally

cognizable right of action is insufficient. *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1965 (2007). The "[f]actual allegations must be enough to raise a right to relief above the speculative level"; they must "state a claim to relief that is plausible on its face." *Id.* At 1965, 1974. *See also, Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007).

Moreover, the United States Supreme Court has addressed the current appropriate standard that must be applied in considering a Motion to Dismiss for failure to state a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The *Iqbal* Court stated in part as follows:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice . . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss . . . . Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

556 U.S. at 678-79 (citations omitted).

## 5. The Case at Bar

As can be seen in the facts alleged by Plaintiff in his Second Amended Complaint recounted above, the majority of Plaintiff's allegations are conclusory, plead with insufficient particularity to satisfy the requisite pleading standards, and fail to state a claim upon which relief

can be granted. As additionally evidenced above, Plaintiff has filed numerous actions in the bankruptcy court, chancery court, District Court, and Sixth Circuit, along with filing a Writ of Certiorari to the United States Supreme Court, each pertaining to these claims. Plaintiff's claims have been litigated and relitigated; they are barred by the doctrines of res judicata and collateral estoppel.

Moreover, taking the sufficient allegations as true, and as Plaintiff concedes, Plaintiff's claims, accrued at the latest, in 2013. As noted, Plaintiff filed suit under 42 U.S.C. §1983. *See* Docket No. 1. Plaintiff argues that his claims are subject to a 7 year statute of limitations period and are therefore timely; however, claims under § 1983 are subject to the 1 year limitations period discussed above and the 7 year limitations period Plaintiff relies upon applies to adverse possession. Plaintiff's claims, however, turn on allegations of fraudulent concealment and fraudulent conversion, with resultant wrongful foreclosure and sale; accordingly, adverse possession is inapplicable to the instant action. Plaintiff's claims are therefore subject to the 1 year § 1983 statute of limitations and 3 year fraud statute of limitations periods discussed above. Because Plaintiff did not file the instant action until October 4, 2018, the entirety of Plaintiff's claims are time-barred. This action should therefore be DISMISSED WITH PREJUDICE.

## IV. Conclusion

For the reasons set forth below, the undersigned finds that Plaintiff's claims are time-barred, barred by the doctrines res judicata and collateral estoppel, conclusory, plead with insufficient particularity, and fail to state a claim upon which relief can be granted. The undersigned therefore recommends that Defendants' Motions to Dismiss (Docket Nos. 100, 104,

115, 117, 128, 130, 132) be GRANTED and that Plaintiff's claims against them be DISMISSED WITH PREJUDICE.

With regard to Defendant Michael Towns, the only served Defendant not a party to one of the instant Motions to Dismiss, the undersigned finds that Plaintiff's allegations against Michael Towns, as the bona fide purchaser of the foreclosed upon Realty, are time-barred, conclusory, and insufficient to state a claim upon which relief can be granted. Accordingly, the undersigned recommends that Plaintiff's claims against Defendant Town likewise be DISMISSED WITH PREJUDICE.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.


JEFFERY S. FRENSLEY
United States Magistrate Judge