IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DWIGHT MITCHELL,<br>    Plaintiff,<br><br>v.<br><br>WILSON TAYLOR, KIMBERLY TAYLOR,<br>CITIZEN'S BANK, CITY OF HARTSVILLE,<br>TN, MARY HOLDER, BETTY LOU TAYLOR,<br>HATTIE McDONALD, JAMES McDONALD,<br>THOMAS LARRY EDMONSON, JAMES<br>DELANIS, BAKER DONELSON BEARMAN<br>CALDWELL & BERKOWITZ, KEIN KEY,<br>MICHAEL TOWNS, TOMMY P. THOMPSON,<br>BETTY SUE HIBDON,<br>    Defendants. | Case No. 3:18-cv-01023<br>Judge Crenshaw / Frensley |

## REPORT AND RECOMMENDATION

This matter is before the Court upon Judge Crenshaw's Order (Docket No. 182), which determined that Plaintiff's Complaint had failed to state a federal claim, such that the Court had subject-matter jurisdiction over Plaintiff's remaining state law claims only if there existed diversity of Citizenship. Docket No. 182. Because diversity was in question, Judge Crenshaw Ordered in pertinent part as follows:

> If the Magistrate Judge's legal analysis concludes that the Court has diversity jurisdiction, the Court respectfully requests the Magistrate Judge to reconsider whether Mitchell's claims are time-barred and determine what effect, if any, this has on the pending motions to dismiss. In making this determination, the Magistrate Judge should consider whether Tenn. Code Ann. § 28-3-105 applies to actions for the conversion of real property, and to what extent Mitchell's fraudulent concealment claims may have been tolled while pending in federal court. (See Doc. No. 181 at 3.) Before it may dismiss the other state law claims, the Court also finds it necessary for the Magistrate Judge to provide specific examples and further issue-specific legal analysis regarding why Mitchell's claims are otherwise "barred by the doctrine of res judicata and collateral estoppel, conclusory, plead with insufficient particularity, and fail to state a claim upon which relief can be granted."

> (See Doc. No. 175 at 54-56.) In his forthcoming R&R, the Magistrate Judge may incorporate by reference the prior R&R's comprehensive factual and procedural background, adding additional facts only where necessary to explain the Magistrate Judge's legal analysis. (See id. at 2-50.)

*Id.*

On October 5, 2020, the undersigned held a hearing on the Motion to Establish Domicile, at the end of which, the undersigned ruled that domicile had been established. Docket No. 222. Accordingly, the undersigned invited the parties to submit additional briefing on the issues identified in Judge Crenshaw's Order, recounted above. *Id.* Having received and reviewed the parties' additional briefing, the undersigned finds and recommends as discussed below.

As a preliminary matter, pending before the Court is a Motion for Leave to File a Response to the Supplemental Memorandum filed by Plaintiff after the hearing. Docket No. 234. That Motion is hereby GRANTED, and the undersigned will consider Defendants' Response. Docket No. 234-1.

Also as a preliminary matter, the undersigned incorporates the detailed factual background and procedural history recounted in the earlier-issued Report and Recommendation in this case. Docket No. 175, pp. 20-50. By way of summary, Citizen's Bank made a commercial loan to Plaintiff in 2002 in connection with the old-age home he operated. Plaintiff argues that the deeds for that property contained incorrect property descriptions and notarized but unwitnessed documentation but were recorded anyway, and that the address of the property was changed with "fraudulent intent."

In 2007, the State of Tennessee closed Plaintiff's old-age home via an Order (which was not appealed) on account of its unsanitary and unsafe conditions. With the old-age home shut down, Plaintiff stopped making payments on the loan and attempted to stop foreclosure on the home in a series of five bankruptcies. In addition to the five bankruptcies, Plaintiff has filed claims

2

Case 3:18-cv-01023  Document 254  Filed 03/04/21  Page 2 of 19 PageID #: 1632

with the Equal Employment Opportunity Commission, the Tennessee Department of Financial Institutions, and the Federal Deposit Insurance Corporation, and has filed lawsuits in the Chancery Courts for Davidson and Trousdale counties, as well as three federal court lawsuits and their subsequent appeals to the United States Court of Appeals for the Sixth Circuit, a request for *en banc* review, and a Petition for Certiorari to the United States Supreme Court – all related to the same core facts (the loan for the old-age home, the Ordered closing of that home as a result of unsafe and unsanitary conditions, and the foreclosure of the home as collateral on the loan).

In light of Plaintiff's lengthy history of litigation over these events, the undersigned begins by evaluating whether Plaintiff's current claims are barred by the doctrine of collateral estoppel.

### A. Collateral Estoppel

In order to prevail on a claim of collateral estoppel, the party so asserting must establish that: (1) the issue to be precluded is identical to an issue decided in an earlier proceeding; (2) the issue to be precluded was actually raised, litigated, and decided on the merits in the earlier proceeding; (3) the judgment in the earlier proceeding has become final; (4) the party against whom the collateral estoppel is asserted was a party or is in privity with a party to the earlier proceeding; and (5) the party against whom collateral estoppel is asserted had a full and fair opportunity in the earlier proceeding to contest the issue now sought to be precluded. *Bowen v. Arnold*, 502 S. W. 3d 102 (Tenn. 2016), *quoting Mullins v. State*, 294 S. W. 3d 529, 535 (2009).

#### 1. Inaccurate Property Descriptions in the Deed

In October 2009, while represented by counsel, Plaintiff argued that the property descriptions on his deeds differed from the descriptions given to the United States Small Business Administration [SBA] in connection with the SBA loans. 3:09-bk-10241, Docket No. 30. The Bankruptcy Court held an evidentiary hearing and granted relief from the stay. *Id.*, Docket No. 48.

This ruling became final on March 16, 2010 when Plaintiff's bankruptcy case was dismissed. *Id.*, Docket No. 61.

Additionally, Plaintiff attempted to stop the foreclosure of Citizen's Bank by filing another bankruptcy and arguing the preclusive effect of inaccurate property descriptions. 3:10-bk-06545, Docket No. 26. The Bankruptcy Court ruled against Plaintiff, affirmed the findings of the earlier Bankruptcy Court, and granted Citizen's Bank relief from the stay. *Id.*, Docket No. 47.

Moreover, during Plaintiff's fifth bankruptcy, Plaintiff moved to set aside the foreclosure and added to his argument that the deeds were void due to inaccurate descriptions by including an argument that his signature was forged. 3:10-bk-09670, Docket No. 32. Again, the Bankruptcy Court rejected the argument and denied Plaintiff's motion to set aside. *Id.*, Docket No. 39.

As demonstrated, Plaintiff has had full and fair opportunities to litigate his issues with the property description contained in the deed through to final conclusion. The issue of whether the deed was inaccurate, vague, or forged has been repeatedly addressed and resolved in prior litigation. *See* 3:09-bk-10241, Docket Nos. 48, 61; 3:10-bk-06545, Docket No. 47; 3:10-bk-09670, Docket No. 39; 3:09-bk-10241, Docket No. 92; 3:17-cv-01155, Docket No. 5; and 18-5474, Order. Accordingly, any such claims Plaintiff asserts herein are barred by collateral estoppel.

### 2. Wrongful Foreclosure / Whether Citizen's Bank was a Secured Creditor

Although Plaintiff asserts that Citizen's Bank was not a secured creditor and that their loans only covered part of the property, as discussed above, Plaintiff has litigated these issues. Specifically, in 2009, Citizen's Bank asserted it was a secured creditor and requested relief from an automatic stay. 3:09-bk-10241, Docket No. 22. Plaintiff asserted then that the deeds were inaccurately drawn and described property which only covered part of his tract such that Citizen's Bank's foreclosing on and taking all of the property when their loans only covered a part of it was

4

wrongful. *Id.*, Docket No. 30. The Bankruptcy Court held a hearing on February 9, 2010, and, on February 17, 2010, issued an Order granting Citizen's Bank relief from the stay. *Id.*, Docket No. 48. In a motion to reopen his case, Plaintiff again asserted Citizen's Bank knew it was not a secured creditor. *Id.*, Docket No. 87. Plaintiff's motion was denied (*Id.*, Docket No. 92) and Plaintiff did not prevail on appeal (3:17-cv-01155, Docket No. 5). Accordingly, the issues of whether Citizen's Bank was a secured creditor, whether loans only covered part of Plaintiff's property, and whether the foreclosure was wrongful have been raised, litigated, and decided on the merits. They are therefore barred by collateral estoppel.[1]

### 3. Changes in the Property's Mailing Address

Plaintiff attempted to reopen his 2009 bankruptcy by arguing that the change in Mailing address of the property from 700 McMurray to 802 McMurray constituted "new evidence" that warranted reopening his case and setting aside the foreclosure sale. 3:09-bk-10241, Docket No. 87. Plaintiff's request to reopen based on the "new evidence" of the change of mailing address was rejected by the Bankruptcy Court (*Id.*, Docket No. 92), the United States District Court of the Middle District of Tennessee (3:17-cv-01155, Docket No. 5), and the United States Court of Appeals for the Sixth Circuit (18-5474, Order). Moreover, the Sixth Circuit found Plaintiff's arguments so frivolous that they awarded sanctions against him and ordered him to pay Citizen's Bank's attorney fees. *Id.* The issue of whether the changes in the mailing address had any significance to Plaintiff's claims over the real property have likewise been litigated to a final conclusion and is also barred by collateral estoppel.

---

[1] Regarding Plaintiff's allegation that, in a Trustee's Deed dated September 10, 2010, Defendant Betty Sue Taylor wrongfully sold his property to Citizen's Bank for $25,000, as discussed above, Plaintiff has repeatedly litigated the issues relating to losing his property in foreclosure and any such claims are barred by collateral estoppel.

5

#### 4. Title Insurance

In Plaintiff's November 1, 2013 motion to reopen his bankruptcy case, Plaintiff argued that he could "now show with new evidence that title insurance would not cover any of Citizen's Bank's loans with Plaintiff." 3:09-bk-10241, Docket No. 87. As discussed above, this motion was denied. *Id.*, Docket No. 92. Thus, Plaintiff's title insurance claims have been asserted and denied, and are therefore barred by collateral estoppel.[2]

#### 5. Larry Edmonson

Although Plaintiff argues that Larry Edmondson's actions should impute liability to Citizen's Bank and not be subject to res judicata or collateral estoppel principles because those principles were not raised in earlier litigation, res judicata and collateral estoppel depend on rulings in prior litigation such that they cannot be earlier raised; Plaintiff's argument therefore lacks merit.

Additionally, to the extent that Plaintiff had concerns with the Clerk's inquiry in 3:09-ap-00146, Docket No. 9, or believed that it gave rise to a claim, Plaintiff should have raised those concerns at that time, in that litigation. Plaintiff's failure to do so renders his current claim barred by the collateral attack doctrine. *See Pratt v. Ventas, Inc.*, 273 B.R. 108, 114 (W.D. Ky. 2002). Moreover, it is important to note that Plaintiff is imputed knowledge of alleged claims that he knew about or "could have learned through minimal investigation of public records." *New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 502 (6th Cir. 2003).

### B. Plaintiff's Other Claims

Turning to the remaining claims contained in Plaintiff's Second Amended Complaint, the

---

[2] Additionally, attached to his Second Amended Complaint in the instant action, Plaintiff submitted an August 23, 2010 letter from Stewart Title Guarantee Company, which explains to Plaintiff that he is not the insured. 3:18-cv-01023, Docket No. 92-19. This August 23, 2010 letter establishes that Plaintiff's title insurance claims accrued in 2010 and are therefore barred by the statute of limitations.

undersigned will consider whether Plaintiff has stated a claim upon which relief can be granted on each.[3]

    1. **Fraud or Intentional Misrepresentation**

As an initial matter, claims of fraud must be plead with particularity. Fed. R. Civ. P. 9(b). Conclusory allegations of fraud are insufficient. Fed. R. Civ. P. 12(b)(6).

In order to prevail on a claim for fraud or intentional misrepresentation, Plaintiff must establish: (1) Defendant made a representation of an existing or past fact; (2) the representation was false when made; (3) the representation was in regard to a material fact; (4) the false representation was made either knowingly or without belief in its truth or recklessly; (5) Plaintiff reasonably relied on the misrepresented material fact; and (6) Plaintiff suffered damages as a result of the misrepresentation. *Diggs v. LaSalle National Bank Assoc.*, 387 S. W. 3d 559, 564 (W. D. Tenn. 2012).

Plaintiff has failed to so establish. Plaintiff's assertions lack the context and detail required to sufficiently state a plausible claim for fraud, and Plaintiff has failed to provide sufficient factual support to establish the requisite knowledge.

With regard to Plaintiff's fraud claim against Defendant Edmondson, Plaintiff cannot sustain this claim because regardless of whether Defendant Edmondson had represented both Citizen's Bank and Alternative Healthcare Solutions ("AHS"), Inc. (which the record shows he did not), such alleged conflict of interest would be an ethical issue, not fraud. Additionally, Plaintiff cannot prevail on his assertions that because Defendant Edmondson was (mistakenly)

---

[3] To the extent that Plaintiff, in his post-domicile hearing supplemental memorandum, attempts to recharacterize or raise new claims for relief, the undersigned will not consider those claims because Plaintiff did not raise them in his Second Amended Complaint and they are therefore not properly before the Court.

identified by Plaintiff's former counsel as the attorney for AHS, Inc., Defendant Edmondson had a conflict of interest so significant that it overrides Plaintiff's default on his loans with Citizen's Bank, Citizen's Bank's status as a secured creditor, and the foreclosure sale that was repeatedly approved by the Bankruptcy Court.

### 2. Fraudulent Conversion of Real Property

#### a. Statute of Limitations

The Parties do not dispute that Tennessee recognizes claims for conversion of real property. They do not agree on the appropriate statute of limitations for such claims. The Plaintiff argues that the appropriate statute of limitations for fraudulent conversion is ten years. Docket No. 181, pp. 1-3. In support of his position, Plaintiff relies upon the unreported decision of the Tennessee Court of Appeals in *Estate of Ralston; ex rel: Ralston v. Hobbs*, 2010 WL 4272692 (Tenn. Ct. App. October 28, 2010). The Defendants argue that Tennessee courts have held that the six-year statute of limitation set forth in T. C. A. § 28-3-109 applies to claims involving the alleged wrongful occupation of land and note that *Ralston* has never been cited for the proposition that a ten year status of limitations applies. Docket No. 234-1, p. 9.

Defendants argue that the Court in *Ralston* failed to consider a three year status of limitations for "[a]ctions for injuries to personal or real property" in T C. A. §28-3-105(a); six-year statute of limitations for "[a]ctions for the use and occupation of land and for rent;" and the seven year statute of limitations for actions "at law or in equity for recovery of any lands, tenements or herediments (sic)" found in T. C. A. §28-2-103(a). *Id.* They argue that the application of any of these statutes of limitation for Plaintiff's claim for conversion of real property would bar the claim.

In *Ralston,* the Defendant argued that Plaintiff's conversion claim was barred by the three-

8

year statute of limitations set forth in T. C. A. § 28-3-105. *Ralston, supra,* at *4. The Defendant argued that the claim fell under T. C. A. § 28-3-105 because it sought to recover property that was sold or transferred. *Id.* The Court found that T. C. A. § 28-3-105 addressed only actions for "conversion of personal property." *Id.* Because this was an action for conversion of real property, the court found that the applicable statute of limitations was found in T. C. A. §28-3-110 which provides a ten-year statute of limitations. *Id.* Applying the ten-year statute of limitations to that action, it was timely. *Id.*

While the Defendants take issue with the analysis in *Ralston,* the language used by the Court could not be clearer. Utilizing a strict constructionist view of the statutory language, the Court found that claims for conversion of real property were not covered under T. C. A. §28-3-105. *Id.* The Defendants have not cited any cases contradicting the ruling in *Ralston,* and the Court has not found any either. As such., it appears that Plaintiff's claims for real property is timely before the Court.

### b. Collateral Estoppel

The alleged factual basis underlying Plaintiff's claim for fraudulent conversion of real property is not new. At its core, the Plaintiff's complaint is that the Defendants engaged in conversion of real property when they sold his property pursuant to a court approved foreclosure sale. This core issue has been raised and litigated over multiple years and many forums. Given the multiple orders permitting the foreclosure sale and prior court orders rejecting Plaintiff's challenges to same, this claim is barred by the doctrines of *res judicata* and/or collateral estopple.

### c. Failure to State a Claim

As noted, claims of fraud must be plead with particularity. Fed. R. Civ. P. 9(b). Conclusory allegations of fraud are insufficient. Fed. R. Civ. P. 12(b)(6).

9

Conversion requires proof of: (1) the appropriation of another's property to one's own use and benefit; (2) the intentional exercise of dominion over it; and (3) in defiance of the true owner' rights. *PNC Multifamily Capital v. Bluff City*, 387 S.W.3d 525, 553 (Tenn. Ct. App. 2012). Plaintiff has not so alleged. Plaintiff has not alleged that any individual Defendant appropriated his property for his/her own use and benefit, nor has Plaintiff alleged that any individual Defendant exercised intentional dominion over his property in defiance of his rights. Plaintiff's allegations that Defendants changed the address of the real property after it was foreclosed upon by Citizen's Bank fails to state a claim for fraudulent conversion of real property. Moreover, Defendants did not sell the property "in defiance" of Plaintiff's rights, they sold it pursuant to a court-approved foreclosure sale. Plaintiff cannot sustain his conversion claim when the property was sold in accordance with a Bankruptcy Court approved sale; this claim should therefore be dismissed.

### 3. Fraudulent Concealment

#### a. Statute of Limitations

The district court asked that the undersigned consider to what extent Mitchell's fraudulent concealment claims may have been tolled while pending in federal court. Docket No. 182, p. 6. In that prior lawsuit, the Plaintiff's federal claims were dismissed with prejudice and the court declined to exercise supplemental jurisdiction under 28 U. S. C. §1367 over Plaintiff's state law claim against Wilson Taylor. 3:15-cv-01310, Docket No. 98, p. 6. Plaintiff argues that his fraudulent concealment claim is brought within the statute of limitations because it was tolled by the 2015 filing in federal court. Docket No. 228, p. 7. Plaintiff argues the statute of limitations is tolled under that the Supreme Court ruling in *Artis v. District of Columbia*, 133 S. Ct. 594, 596 (2018).

As the Defendant's note, Citizen's Bank and Hibdon were not named in the 2015 lawsuit.

3:15-cv-01310. Defendant Wilson Taylor was named but does not appear to have ever been served in that case. Plaintiff's claim for fraudulent concealment named only Wilson Taylor in his individual and official capacity. *Id.* at Docket No. 8, p. 27-29.

Defendant Citizen's Bank and Hibdon argue that 28 U. S. C. §1367 does not toll the claims brought against them in this lawsuit because Plaintiff's claims against them in the 2015 action were not asserted under subsection (a) of 28 U. S. C. §1367 in the 2015 action. Docket No. 234-1, p. 10. The same is true they argue for Defendant Thompson because he was named only in Plaintiff's federal law claims in the 2015 lawsuit. *Id.*

As to Wilson Taylor, Defendants contend that notwithstanding Plaintiff's failure to serve Taylor in the prior litigation, Plaintiff missed the statute of limitations and the tolling provision of §1367 (d) does not save his claim against Wilson Taylor. *Id.* at pp. 10-11. Taylor argues that "the limitations clock stops the day the claim is filed in federal court and, 30 days post dismissal, restarts from the point at which it had stopped" under 28 U.S.C. § 1367(d). *Id.* at pp. 11-12. Quoting *Artis*, 138 S. Ct. 594, 603 (2018). As a result, they contend that since the claim was dismissed on August 8, 2016, Plaintiff had until October 29, 2016, to refile his dismissed state law claim against Wilson Taylor. *Id.* at p. 12. Because he failed to do so, the statute of limitations applicable to the fraudulent concealment claim against Wilson Taylor expired. *Id.* Defendants distinguish Plaintiff's "claims" from his "case" and contend that once the state law fraud claim was dismissed and not made part of his appeal, it was no longer pending in federal court and the statute of limitations was not tolled by §1367 during the pendency of his appeal. *Id.*

Plaintiff asserts that it would place an undue burden on a party's right to appeal if the statute of limitations were to run as soon as there is a dismissal in the district court. Docket No. 228. Plaintiff further argues that the state law claim against Wilson Taylor was dismissed in the 2015

11

case based solely on the decision not to exercise supplemental jurisdiction after the federal claims were dismissed. *Id.* at p. 8. Plaintiff asserts that had he been successful on appeal, his state law claim would have been revived. *Id.*

The availability of tolling is necessarily dependent upon the claim having been filed in another forum in the first instance. If the claim is never filed, there is nothing to toll. Here, the review of the 2015 lawsuit clearly establishes that the only Defendant against whom the fraudulent concealment claim was asserted was Wilson Taylor, therefore, he is the only Defendant to whom tolling could apply. As such, Plaintiff's claims for fraudulent concealment as to any other Defendants are not tolled by the filing of the 2015 action and thus not brought within the applicable statute of limitations and must fail.

Wilson Taylor creates a more interesting dilemma. Taylor asks the question "[a]re statutes of limitations tolled by a complaint when the Plaintiff makes no concerted effort to serve the defendant at issue?" Docket No. 234-1, p. 10. However, he does not propose an answer to that question or provide the court with any authority to do so. Rather, he contends that even if it does, the statute was missed based upon his argument that the statute began to run again after the claim was dismissed by the district court. *Id.* at p. 11. Thus, Defendant contends that Mitchell had until October 29, 2016 to refile his dismissed state law claim against Taylor under 28 U. S. C. §1367(d). Mitchell did not file his claim by that date and therefore the tolling provision of 28 U. S. C. §1367(d) does not save his claim. *Id.*

The Plaintiff does not challenge Defendant's assertion that he did not appeal the dismissal of his state law claims. Docket No. 228. Rather, he contends that had he been successful in his appeal of the court's dismissal of his federal claims his state law claims would have been revived. *Id.* at p. 8. While the Defendant references §1367, neither party provides the Court with any case

12

law addressing this specific issue.

Subsection (a) of 28 U. S. C. §1367 provides that a district court may exercise supplemental jurisdiction over state law claims that are so related to claims over which the court is exercising original jurisdiction "they form part of the same case or controversy under Article III of the United States Constitution."

It is undisputed that the basis of the Court's jurisdiction over the fraudulent concealment claim in the 2015 litigation is supplemental jurisdiction under 28 U. S. C. §1367. It is well settled law in the Sixth Circuit that supplemental jurisdiction is a doctrine of discretion not of right. *Habich v. City of Dearborn*, 331 F. 3d 524, 535 (6th Cir. 2003).

Subsection (d) of 28 U. S. C. §1367 is a savings provision that "tolls the statute of limitations on any state claim over which a federal court has exercised supplemental jurisdiction until [at least] after its dismissal."

Numerous authorities have recognized that the purpose of §1367(d) was to ensure that Plaintiffs could pursue their state law claims in state court in the event that the federal court did not exercise supplemental jurisdiction over those claims. As noted in *Moore's Federal Practice*:

> Subsection (d) of the supplemental jurisdiction statute enacts a salutary tolling provision to save supplemental claims that have been dismissed in federal court for assertion in state court . . . The legislative history indicates that the provision's purpose is to prevent the loss of claims to statute of limitations if state law might fail to toll the running of the limitation period while a supplemental claim is pending in federal court. It also eliminates a possible disincentive from such a gap in tolling if a plaintiff might wish to seek voluntary dismissal of other claims in order to pursue the entire matter in state court, after a federal court dismisses a supplemental claim.

16 James Wm. Moore et al., *Moore's Federal Practice* § 106.05[5] (3rd ed. 1999) (citations omitted).

Here, the Plaintiff filed his claim for fraudulent concealment in the 2015 action asking the Court to exercise supplemental jurisdiction over the claim. The district court dismissed the

13

Case 3:18-cv-01023 Document 254 Filed 03/04/21 Page 13 of 19 PageID #: 1643

federal claims for which there was original jurisdiction in this court and dismissed the fraudulent concealment claim without prejudice to be refiled in state court. The Plaintiff subsequently filed the instant action which is currently before the Court on the basis of diversity jurisdiction. The Plaintiff's argument for the timeliness of this claim is that his prior assertion of the claim under the Court's supplemental jurisdiction tolled the statute of limitations. The Plaintiff's argument fails on two accounts.

While it does not appear that the Sixth Circuit has addressed this issue it has been considered by several lower courts. In *Parrish v. HBO & Co.,* the court concluded that there is "no evidence that § 1367 was intended to act as a savings statute, allowing a plaintiff to refile in *federal court.* 85 F. Supp. 2d 792, 796 (S. D. Ohio 1999) (emphasis in original). The Court held that § 1367(d) operates to guarantee that plaintiffs do not lose the ability to refile their claims in *state court,* in the event that state law does not provide for the tolling of the statute of limitations during the pendency of the federal action, following the federal court's failure to exercise supplemental jurisdiction." *Id.* In other words, this provision "provides a tolling rule that must be applied by state courts." *Jinks v. Richland Cnty, S. C.*, 538 U. S. 456, 459 (2003). It ensures that a Plaintiff will have at least 30 days after the federal court dismisses the claims to bring them in state court if the claims were timely filed in federal court. *Id.*

Here however, the Plaintiff reads §1367(d) to create a tolling rule that also applies in federal court. Following *Jinks*, several courts have recognized tolling under §1367(d) does not apply to claims in federal court. *See Gibson v. Slone*, 2011 WL 2009815 at *2 (E. D. Ky. May 23, 2011) (§1367(d) tolling does not apply to claim filed in federal court); *Peters v. Board of Trustees of Vista Unified School District,* 2009 WL 2485753, at *3 (S. D. Cal. August 11, 2009)(same); *Parrish v. HBO & Co.*, 85 F. Supp. 2d 792, 796 (S. D. Ohio 1999)(same). As a result, Plaintiff

does not benefit from tolling in the instant case refiled in federal court.

Plaintiff's claim is likewise untimely because the operation of the statutory tolling provision applicable to a supplemental claim is triggered by the dismissal of that claim from federal district court not the conclusion of the appellate review process. *See Jarmuth v. Frinzi*, 2006 WL 4730263 (N. D. W. Va. July 25, 2006).

In *Jarmuth v. Frinzi,* the Plaintiff originally filed a claim against the Defendant and others in the Western District of Pennsylvania. *Id.* at *9. That action alleged federal claims and state claim under Pennsylvania common law pursuant to 28 U. S. C. §1367. *Id.* The Plaintiff's federal claims were dismissed, and the trial court concluded it should not exercise supplemental jurisdiction over the state claims because the underlying federal claims had been dismissed. *Id.* Jarmuth appealed the dismissal of his claims to the Third Circuit which affirmed the dismissal on March 24, 2004. *Id.* at *10. On April 6, 2004, Jarmuth, filed an action in the Northern District of West Virginia asserting his common law claims based on diversity jurisdiction. *Id.*

The Court found that the tolling provision of 28 U. S. C. §1367(d) applied to supplemental state law claims refiled in state court subsequent to dismissal not to a new case filed in another federal court. *Id.* at *11, *citing Jinks, supra.* The Court further concluded that even if §1367 applied to the defamation claim before the court in West Virginia, "it would still be untimely because the operation of the statutory tolling provision applicable to a supplemental claim is triggered by that claim's dismissal from federal district court not the conclusion of the appellate review process. *Id.* at *11. Applying well established rules for statutory construction, the court found that there was no ambiguity to the word "dismissed" holding that "common sense counsels that it is the ruling of the trial court judge that effects the dismissal of a claim." *Id.* at *12.

Assuming Mitchell's original claim for fraudulent concealment in the 2015 action was

15

tolled, and he indeed had the right to refile in state court under §1367(d), he had until October 29, 2016 to refile the claim. He did not do so thus, even if the tolling provisions of §1367(d) properly applied to his current claim, which the undersigned concludes it does not, his claim would still be untimely.

### b. Failure to State a Claim

Again, claims of fraud must be plead with particularity. Fed. R. Civ. P. 9(b). Conclusory allegations of fraud are insufficient. Fed. R. Civ. P. 12(b)(6).

In order to sustain his claims of fraudulent concealment, Plaintiff must plead specific facts that these Defendants failed "to disclose a known fact or condition where he or she had a duty to disclose and another party reasonably relies upon the resulting misrepresentation, thereby suffering injury." *PNC Multifamily, supra,* at 550, *citing Chrisman v. Hill Home Dev., Inc.,* 978 S.W.2d 535, 539 (Tenn. 1998). The fact or condition concealed must be material; that is, a reasonable person would rely upon it or the person concealing the fact has reason to know that the recipient would rely upon it. *Lonning v. Jim Walter Homes, Inc.*, 725 S.W.2d 682, 685 (Tenn. Ct. App. 1986).

Although Plaintiff alleges that certain individual Defendants changed the address of the property he formerly owned, Plaintiff does not discuss why an address change for a property that he no longer owned is a material fact, and he fails to allege reliance upon the allegedly concealed address. Moreover, Plaintiff has failed to allege how the change in address damaged him in light of the fact that Citizen's Bank had already foreclosed on the property when any such change of address occurred. Accordingly, Plaintiff has failed to state a claim for fraudulent concealment and this claim should be dismissed.

### 4. Civil Conspiracy

16

Plaintiff asserts a claim for civil conspiracy for fraudulent conversion of real property against Mary Holder, James McDonald and Hattie McDonald. Docket No. 92, p. 35. This claim is another side of the same coin apart from his assertion "there is no natural explanation for the changing of the address of the Plaintiff's property," Plaintiff has plead no facts supporting the allegation of a civil conspiracy amongst the parties. Docket No. 92, ¶¶ 90-200. In addition, for the reasons discussed elsewhere within this Report and Recommendation, any civil conspiracy in connection with the alleged fraudulent concealment and collusion between these Defendants are barred by the applicable statute of limitations, collateral estoppel and *res judicata* principles and the collateral attack doctrine. Accordingly, Plaintiff's claims should be dismissed.

### 5. Hiring Larry Edmonson and James DeLanis

To the extent that Plaintiff argues that Defendant Betty Lou Taylor fraudulently hired Larry Edmonson and James DeLanis, Plaintiff has failed to provide sufficient factual details to establish a claim for fraudulent hiring. Furthermore, among the documents attached to the Plaintiff's Second Amended Complaint identified as "Larry Edmondson Conflict Documentation," are a clerk's inquiry dated July 31, 2009, a Response dated February 7, 2011 and a printout dated September 19, 2012. Docket No. 92-10. The Plaintiff was a party to those proceedings, and they were made publicly available at that time. Any applicable statute of limitations relating to those documents and Plaintiff's fraudulent hiring claim have long since run. As a result, this claim should be dismissed.

### 6. Tortious Interference with Contracts

In as much as Plaintiff seeks to assert claims against Defendant Edmondson related to being mistakenly identified on PACER as the attorney for Alternative Healthcare Solutions ("AHS"), Inc., the proper time to take issue with the Clerk's inquiry, the mistake on PACER, or anything

17

related to the issue of who Defendant Edmondson was representing in the 2009 bankruptcy case would have been during the 2009 bankruptcy. Plaintiff's failure to do so then prevents him from launching a collateral attack now. *See Pratt v. Ventas, Inc.*, 273 B.R. 108, 114 (W.D. Ky. 2002). Additionally, the Bankruptcy Court records officially show that AHS, Inc. was not represented by counsel, which is consistent with Defendant Edmondson's alleged representations to the U.S. Trustee's office that he did not represent AHS, Inc. As a result, this claim likewise fails and should be dismissed.

### 7. **Wilson Taylor**

In the remand order, Judge Crenshaw held that the Magistrate Judge has discretion to address "any issues raised in the Parties' objections to the prior R & R." Docket No. 187, p. 2. Defendants assert that the Court should exercise its discretion regarding Wilson Taylor and dismiss those claims with prejudice.

Wilson Taylor has been a Defendant in the two previous federal actions filed by Plaintiff based upon his alleged acts and failure to act as President of Citizen's Bank. Plaintiff's claims against Defendant Wilson Taylor related to his conduct acting on behalf of Citizen's Bank and therefore, the analysis of those claims is equally applicable to Wilson Taylor. As with the other Defendants, Plaintiff's claims against Wilson Taylor are barred by the statute of limitations and the doctrine of collateral estopple and *res judicata* and therefore, should be dismissed as well.

### **RECOMMENDATION**

In light of the foregoing, the undersigned recommends that the following Motions be GRANTED: Defendant Citizen's Bank's and Wilson Taylor's Motion to Dismiss (Docket No. 100); Defendant Betty Lou Taylor's Amended Motion to Dismiss (Docket No. 104); Defendant Thomas Larry Edmonson's First Motion to Dismiss (Docket No. 115); Defendant Betty Sue

18

Hibdon's Motion to Dismiss (Docket No. 128); Defendant City of Hartsville, Tennessee, Mary Holder, Hattie McDonald, James McDonald, Kimberly Taylor's Motion to Dismiss (Docket No. 130); Defendant Tommy Thompson's Motion to Dismiss (Docket No. 132); and Defendant Michael Towns' Motion to Dismiss (Docket No. 231). The undersigned therefore recommends that this action be **DISMISSED WITH PREJUDICE**.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn,* 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**